Sixth Division
December 10, 2010

No. 1-07-3372

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the Circuit Court |
| | ) | of Cook County |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | 05 CR 4414 |
| | ) | |
| LORELL JOHNSON, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Rosemary Higgins-Grant, |
| | ) | Judge Presiding |

JUSTICE McBRIDE delivered the opinion of the court:

Pursuant to the supervisory order issued by the Illinois Supreme Court in People v. Johnson, 237 Ill. 2d 574 (2010), we vacated our previous opinion and reconsider our decision in light of People v. Williams, 238 Ill. 2d 125 (2010).

Following a jury trial which included deoxyribonucleic acid (DNA) evidence, defendant Lorell Johnson was found guilty of aggravated criminal sexual assault and not guilty of aggravated kidnaping and the trial court sentenced him to a term of 30 years to run consecutive to defendant's prior conviction. Defendant appeals, arguing that the admission of inculpatory DNA evidence violated his sixth amendment confrontation rights and that the trial court erred in admitting this DNA evidence because a sufficient foundation was not established for the forensic scientist's opinion testimony.

The following evidence was admitted at defendant's jury trial. Shortly after midnight on July 12, 2003, the victim, F.F., was standing in line at Maxwell's, a neighborhood hot dog stand on the south side of Chicago. At the time, F.F. was addicted to drugs. Defendant approached F.F. as she stood in line. F.F. had never seen defendant before that moment. F.F. and defendant

spoke. He told her that he had drugs at his house. F.F. got out of the line and followed defendant to get the drugs. She followed him down an alley into the backyard of an abandoned building. F.F. wanted to leave, but defendant grabbed her body and dragged her up the stairs of the building to the top floor. F.F. yelled, "stop," and "no," but defendant continued to carry her up the stairs. F.F. scraped her arm on the railing while trying to reach for it.

When they reached the top of the stairs, defendant pulled F.F. into a dark room and threw her against the wall. F.F. hit her head on a low part of the ceiling. He pushed her against the window, put his hand around her throat and told her to be quiet or he would throw her out the window. Defendant pulled down F.F.'s pants and then his own pants. He then had vaginal intercourse with F.F. F.F. described the assault as violent and that he "jammed" his penis into her vagina. Defendant removed his penis from F.F.'s vagina, turned to the side and ejaculated on the floor.

Defendant then pulled up his pants and ran down the stairs. F.F. waited until she could no longer hear defendant on the stairs. She left and went to the nearest pay phone at 51st Street and Ashland to call the police. She saw defendant running across the street and pointed him out to a group of nearby men, who then chased defendant. When the police arrived at F.F.'s location, she was incoherent, screaming and pointing in several directions. A police officer suggested she seek treatment for the scrape on her arm that was bleeding. F.F. refused and tried to tell the police that defendant was running by across the street, but the officer did not give chase and the group of men did not catch him. F.F. led the police officer to the abandoned building and told him that defendant had ejaculated on the floor. The officer called for an evidence technician to come to the scene and recover the stain. The stain was recovered on two swabs and was later submitted

2

for biological testing. F.F. became frustrated with the police officer because she felt he was not trying to catch defendant so she left the scene and stayed with a friend for several days.

Later, in 2004, F.F. entered a drug rehabilitation facility. In January 2005, a detective located F.F. at the facility. The detective spoke with F.F. about the sexual assault. After receiving information from the Illinois State Police crime lab (ISP lab), defendant was arrested. F.F. viewed a lineup at Area One and immediately identified defendant as the man who sexually assaulted her.

During the trial, defendant's attorney filed a "Motion *in limine* to Exclude Testimony of Reviewing Expert as Lacking Foundation and Improper Hearsay." The motion asserted that the State would seek to introduce DNA evidence through an analyst, Charlotte Word, who had reviewed the file, but did not participate in any of the actual testing. Defense counsel argued that "[i]ntroduction of this evidence solely through this witness fails to lay a proper foundation for the testing conditions and procedures" and "violates defendant's rights to confrontation" under the sixth amendment and article I, section 8, of the Illinois Constitution. The trial court heard argument on the motion and denied the motion. The court held that the testimony about the DNA profile was admissible if it was the sort of information reasonably relied on by experts in the field.

Charlotte Word testified as a DNA analysis expert. Defendant made no objection to her qualification as an expert. She stated that she worked at Orchid Cellmark in Germantown, Maryland, from 1990 to 2005, when the facility closed. In 2004, Cellmark had a contract with the ISP lab to complete overflow testing. Cellmark was accredited by the American Association of Blood Banks and by the American Society of Crime Laboratory Directors. Word worked as a laboratory director in 2004.

Word stated that she did not participate in the testing of the swab recovered from the crime scene and the preparation of a DNA profile, but she was able to testify as to the results. Her testimony was based on her review of the notes and documentation kept in the lab folder. She said that through her review of the case file, she was able to determine that the proper procedures were followed with the appropriate control tests. The results showed a single male donor of the semen from the swab. Based on her independent review, Word concluded that the results were correct. She observed no discrepancies in the case folder.

The results and the swab were sent to the ISP lab. Following defendant's arrest, a buccal swab was taken from defendant and sent to the ISP lab for testing. ISP lab forensic scientist Brian Schoon testified at trial that he received defendant's buccal swab in June 2005. He performed tests and prepared a DNA profile from the buccal swab. Schoon compared defendant's DNA profile with the single male donor DNA profile obtained from the swab and concluded that the profiles matched. Schoon conducted a statistical analysis and found that the DNA profile from the swab would be expected to occur in 1 in 710 quadrillion black, 1 in 550 quadrillion white or 1 in 430 quadrillion Hispanic individuals. Schoon stated all of his results and conclusions were to a reasonable degree of scientific certainty.

Defendant did not offer any evidence in his case-in-chief. Following deliberations, the jury found defendant guilty of aggravated criminal sexual assault and not guilty of aggravated kidnaping. Defendant filed a motion for a new trial, which included claims that the trial court erred in overruling defense counsel's objections for foundation and confrontation to the testimony about the Cellmark DNA profile. The trial court denied the motion and subsequently sentenced defendant to 30 years in prison to be served consecutive to his sentence for a prior conviction.

1-07-3372

This appeal followed.

On appeal, defendant argues that the DNA profile prepared by Cellmark was inadmissible because (1) it was testimonial hearsay and violated his rights under the confrontation clause because defendant did not have an opportunity to cross-examine any of the analysts who prepared the profile, and (2) the State failed to lay a proper foundation for this evidence as there was no evidence that the equipment used to prepare the profile was adequately calibrated and functioning properly.

Initially, the State points out that defendant did not raise any objection that Schoon's testimony violated his confrontation rights in his motion *in limine* nor in his motion for a new trial, and therefore, any error in Schoon's testimony is forfeited. To preserve an issue for review, defendant must both object at trial and in a written posttrial motion. People v. Woods, 214 Ill. 2d 455, 470 (2005), citing People v. Enoch, 122 Ill. 2d 176, 186 (1988). If a defendant fails to satisfy either prong of this test, his challenge is considered waived on appeal. Woods, 214 Ill. 2d at 470. "This rule is particularly appropriate when a defendant argues that the State failed to lay the proper technical foundation for the admission of evidence, and a defendant's lack of a timely and specific objection deprives the State of the opportunity to correct any deficiency in the foundational proof at the trial level." Woods, 214 Ill. 2d at 470. Thus, any issue regarding Schoon's testimony is forfeited.

However, in his reply brief, defendant asserts that should we find that he forfeited any error in respect to Schoon's testimony, then we should review that issue for plain error. Defendant also contends that he may raise plain error for the first time in his reply brief, despite the fact that Supreme Court Rule 341(h)(7) holds that "[p]oints not argued are waived and shall

5

not be raised in the reply brief." 210 Ill. 2d R. 341(h)(7). Defendant cites to the supreme court's decision in People v. Williams, 193 Ill. 2d 306, 347-48 (2000), in which the supreme court found that it was not precluded from reviewing the defendant's plain error argument despite her failure to raise it in her opening brief.

Supreme Court Rule 615(a) states that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." 134 Ill. 2d R. 615(a). "Under the plain error rule, issues not properly preserved may be considered by a reviewing court under two limited circumstances: (1) where the evidence is closely balanced, so as to preclude argument that an innocent person was wrongfully convicted; or (2) where the alleged error is so substantial that it affected the fundamental fairness of the proceeding, and remedying the error is necessary to preserve the integrity of the judicial process." People v. Hall, 194 Ill. 2d 305, 335 (2000). "However, before invoking the plain error exception, 'it is appropriate to determine whether error occurred at all,' because without error, there can be no plain error." People v. Smith, 372 Ill. App. 3d 179, 181 (2007), quoting People v. Wade, 131 Ill. 2d 370, 376 (1989). Therefore, we will review the issue to determine if there was any error before considering it under plain error.

The sixth amendment to the United States Constitution provides that: "In all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him ***." U.S. Const., amend. VI. This part of the sixth amendment is known as the Confrontation Clause and applies to the states through the fourteenth amendment. People v. Stechly, 225 Ill. 2d 246, 264 (2007). In Crawford v. Washington, the Supreme Court held

6

"[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." Crawford v. Washington, 541 U.S. 36, 68-69, 158 L. Ed. 2d 177, 203, 124 S. Ct. 1354, 1374 (2004). "However, the Crawford Court explicitly declined to define what exactly makes a statement 'testimonial.' " Stechly, 225 Ill. 2d at 266; see Crawford, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374. The hearsay rule generally prohibits the introduction of an out-of-court statement used to prove the truth of the matter asserted. People v. Spicer, 379 Ill. App. 3d 441, 449 (2007). But the Crawford Court pointed out that "[t]he [Confrontation] Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. See Tennessee v. Street, 471 U.S. 409, 414[, 85 L. Ed. 2d 425, 430-31, 105 S. Ct. 2078, 2081-82] (1985)." Crawford, 541 U.S. at 59 n.9, 158 L. Ed. 2d at 197 n.9, 124 S. Ct. at 1369 n.9. Here, defendant asserts that the DNA profile prepared by Cellmark was testimonial hearsay in violation of the confrontation clause since no one who worked on its analysis testified at his trial.

Recently, the Illinois Supreme Court in People v. Williams, 238 Ill. 2d 125 (2010), considered the issue raised by defendant. In that case, the defendant was convicted of aggravated criminal sexual assault, aggravated kidnaping and aggravated robbery. At the bench trial, a forensic scientist with the ISP lab testified that the victim's sexual assault kit was sent to Cellmark for analysis and a DNA profile was prepared. The scientist compared the Cellmark DNA profile with the defendant's DNA profile and concluded that they were a match. The scientist admitted that she did not perform any of the physical testing on the samples herself. Williams, 238 Ill. 2d at 131. On appeal to the supreme court, the defendant argued that the State introduced the

Cellmark report to prove the truth of the matter asserted and the report amounts to hearsay as the State's expert would not have been able to match defendant's DNA profile without the Cellmark report. The State responded that the expert's testimony showed that she only used the Cellmark report to explain how she reached her own conclusion. Williams, 238 Ill. 2d at 143.

The Williams court noted that it "has long held that prohibitions against the admission of hearsay do not apply when an expert testifies to underlying facts and data, not admitted into evidence, for the purpose of explaining the basis of his opinion." Williams, 238 Ill. 2d at 143, citing People v. Lovejoy, 235 Ill. 2d 97, 142 (2009). The supreme court concluded that the expert's testimony about the Cellmark report was not admitted for the truth of the matter asserted, but instead to establish the underlying facts and data used to reach her expert opinion in the defendant's case. Williams, 238 Ill. 2d at 145. As the court pointed out, the evidence against the defendant was the expert's opinion, not the Cellmark report, and the expert testified about her conclusions on the witness stand. Williams, 238 Ill. 2d at 145-46. The expert testified based on her own expertise in comparing the two profiles, one from a blood sample and the other from semen prepared by Cellmark, and did not observe any problems in the chain of custody or any signs of contamination or degradation of the evidence. The supreme court held that the Cellmark report was not used to show the truth of the matter asserted and was not hearsay. Williams, 238 Ill. 2d at 147.

We reach the same conclusion as the supreme court in Williams. Word, a Cellmark analyst, testified about the laboratory's procedures and practices regarding DNA testing, though she did not participate in the testing. She used the report that was prepared as the basis of her expert opinion that the proper procedures were followed in the analysis. Defendant's attorney

was able to cross-examine Word about the basis of her opinion and called attention to the fact that she did not participate in the testing and that she assumed that the analysts properly documented each part of the testing, as required by Cellmark. The same reasoning holds true for Schoon. He used the Cellmark report as the basis for part of his opinion that the male DNA profiled obtained from the crime scene matched defendant's DNA. The Cellmark report was not offered to prove the truth of its contents, but was used as part of the bases for two experts' opinions. Accordingly, we find no Crawford violation in this case, and thus, no error.

After briefing had concluded in this case, the United States Supreme Court issued its decision in Melendez-Diaz v. Massachusetts, 557 U.S. ____, 174 L. Ed. 2d 314, 129 S. Ct. 2527 (2009), which revisited the confrontation clause under Crawford. Thus, we consider what impact, if any, this case has on the present case. In Melendez-Diaz, the defendant was charged with distributing and trafficking cocaine. Rather than offer live testimony to prove that the substance was cocaine, the prosecution "submitted three 'certificates of analysis' showing the results of the forensic analysis performed on the seized substances. The certificates reported the weight of the seized bags and stated that the bags '[have] been examined with the following results: The substance was found to contain: Cocaine.' [Citation.] The certificates were sworn to before a notary public by analysts *** as required under Massachusetts law." Melendez-Diaz, 557 U.S. at ___, 174 L. Ed. 2d at 320, 129 S. Ct. at 2531. Massachusetts law permitted the use of such affidavits to provide *prima facie* evidence of the analyzed substance's composition, quality, and net weight. Melendez-Diaz, 557 U.S. at ___, 174 L. Ed. 2d at 320, 129 S. Ct. at 2531. At trial, the defendant objected to the admission of these certificates, but his objection was overruled and the jury found the defendant guilty. On appeal, the defendant challenged this admission as a

9

violation of his sixth amendment rights, but the appellate court rejected the defendant's claim, relying on a Massachusetts Supreme Court decision which held that "the authors of certificates of forensic analysis are not subject to confrontation under the Sixth Amendment." Melendez-Diaz, 557 U.S. at ___, 174 L. Ed. 2d at 320, 129 S. Ct. at 2531. The state supreme court denied review.

The Supreme Court found that "[t]he 'certificates' are functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.' " Melendez-Diaz, 557 U.S. at ___, 174 L. Ed. 2d at 321, 129 S. Ct. at 2532, quoting Davis v. Washington, 547 U.S. 813, 830, 165 L. Ed. 2d 224, 242, 126 S. Ct. 2266, 2278 (2006). Accordingly, the Court held that "under our decision in Crawford the analysts' affidavits were testimonial statements, and the analysts were 'witnesses' for purposes of the Sixth Amendment. Absent a showing that the analysts were unavailable to testify at trial and that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to ' "be confronted with" ' the analysts at trial." (Emphasis omitted.) Melendez-Diaz, 557 U.S. at ___, 174 L. Ed. 2d at 321-22, 129 S. Ct. at 2532, quoting Crawford, 541 U.S. at 54, 158 L. Ed. 2d at 194, 124 S. Ct. at 1365. "The Sixth Amendment does not permit the prosecution to prove its case via *ex parte* out-of-court affidavits, and the admission of such evidence against [the defendant] was error." Melendez-Diaz, 557 U.S. at ___, 174 L. Ed. 2d at 332, 129 S. Ct. at 2542.

In Williams, the supreme court also addressed the applicability of Melendez-Diaz to this factual situation and concluded that it did not change the court's findings.

"In Melendez-Diaz, the disputed evidence was a

'bare-bones statement' that the substance was cocaine, and the

10

defendant 'did not know what tests the analysts performed, whether those tests were routine, and whether interpreting their results required the exercise of judgment or the use of skills that the analysts may not have possessed.' Melendez-Diaz, 557 U.S. at ___, 174 L. Ed. 2d at 327, 129 S. Ct. at 2537. Here, [the expert] testified about her own expertise, judgment, and skill at interpretation of the specific alleles at the 13 loci, and confirmed her general knowledge of the protocols and procedures of Cellmark. [The expert] also conducted her own statistical analysis of the DNA match. She did not simply read to the judge, sitting as a fact finder, from Cellmark's report. This is in contrast to Cellmark's report, which did not include any comparative analysis of the electropherograms or DNA profiles and was not introduced into evidence. Cellmark's electropherogram, rather, was part of the process used by [the expert] in rendering her opinion concluding that the profiles matched. Thus, [the expert's] opinion is categorically different from the certificate in Melendez-Diaz." Williams, 238 Ill. 2d at 149-50.

The holding in Melendez-Diaz is distinguishable from the instant case as well. Word, though not the analyst who performed the tests, was a supervisor at Cellmark and testified at defendant's trial about the lab process and the tests performed on the DNA profiles. The State presented more than a "bare bones statement" about the procedures employed at Cellmark.

11

Based upon all of the above, we conclude that no error occurred as a result of the introduction of Word's testimony. Accordingly, there was no plain error.

Next, defendant contends that the State failed to establish a proper foundation for admission of the Cellmark DNA profile because there was no evidence that the equipment used to prepare the profile was adequately calibrated and functioning properly.

In Wilson v. Clark, the Illinois Supreme Court adopted Rule 703 of the Federal Rules of Evidence, allowing an expert to give his opinion based on facts not in evidence if those facts are " 'of a type reasonably relied upon by experts in the particular field.' " Wilson v. Clark, 84 Ill. 2d 186, 193 (1981), quoting Fed. R. Evid. 703. However, where the expert testimony is based upon an electronic or mechanical device, the expert must provide some foundational proof that the device was functioning properly at the time it was used. People v. Raney, 324 Ill. App. 3d 703, 710 (2001); see also People v. Bynum, 257 Ill. App. 3d 502 (1994). In Raney, the defendant contended that the State failed to establish a proper foundation for the admission of scientific results from the gas chromotography mass spectrometer (GCMS) machine. The reviewing court found that the record contained no evidence regarding whether the GCMS machine was functioning properly at the time it was used to analyze the substance. Raney, 324 Ill. App. 3d at 710. The Raney court did recognize that "[i]t may not be feasible for each expert to personally test the instrument relied upon for purposes of determining what is a suspected controlled substance." Raney, 324 Ill. App. 3d at 710.

This issue was also resolved in Williams. In that case, no Cellmark representative testified, but the DNA expert from the ISP lab stated that Cellmark was an accredited laboratory and was required to follow specified guidelines in order to perform DNA analysis. The expert

12

"maintained that Cellmark necessarily met the threshold of proper DNA analysis because Cellmark was an accredited laboratory and followed guidelines that she had personally developed." Williams, 238 Ill. 2d at 140. The supreme court distinguished between the testing of narcotics, as done in Raney, and the analysis done in its case. The court found that "the testing of narcotics using a GCMS machine is not comparable to the scientific process at issue in this case." Williams, 238 Ill. 2d at 140. The expert in the defendant's case did not "regurgitate results generated by a machine," but instead conducted her own independent examination of the data related to the samples of genetic material, including items from Cellmark and from the ISP crime lab. Williams, 238 Ill. 2d at 140.

The Williams court further noted that the burden is on the adverse party to challenge the facts underlying the opinion on cross-examination. Williams, 238 Ill. 2d at 140. Therefore, "the issue of [the expert's] reliance on Cellmark's report went to the weight of her opinion and not its admissibility." Williams, 238 Ill. 2d at 141, citing Melendez-Diaz, 557 U.S. at ___ n.1, 174 L. Ed. 2d at 322 n.1, 129 S. Ct. at 2532 n.1 (2009) (stating that it was not the case that "anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case").

This case presents a stronger foundational grounds as a Cellmark director testified at defendant's trial. Word testified as a DNA expert, without objection, and she worked at Cellmark as a laboratory director. She testified extensively about Cellmark's accreditations and the thorough review required to attain such accreditations. She stated that the proper procedure mandated specific notations and the subject case file indicated that those procedures were followed. Her opinion was based on this review of the case file. Under Williams, any challenge

to Word's testimony went to its weight, not its admissibility. Therefore, we find no foundational error in this case.

Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

Affirmed.

GARCIA, P.J., and CAHILL, J., concur.