17 A.3d 278 (2011)
419 N.J. Super. 451
STATE of New Jersey, Plaintiff-Respondent,
v.
William REHMANN, Jr., Defendant-Appellant.
No. A-3291-09T3.
Superior Court of New Jersey, Appellate Division.
Submitted February 3, 2011.
Decided April 29, 2011.
*279 Law Offices of Joseph A. Levin, attorneys for appellant (Joseph A. Levin, on the brief).
Theodore F.L. Housel, Atlantic County Prosecutor, attorney for respondent (Jack J. Lipari, Assistant Prosecutor, of counsel and on the brief).
Before Judges CUFF, FISHER and SIMONELLI.
The opinion of the court was delivered by
FISHER, J.A.D.
In this appeal, defendant argues the Confrontation Clause of the Sixth Amendment was violated when the State, in attempting to prove his blood alcohol content, relied upon the testimony of an expert who supervised but did not actually perform the test on defendant's blood sample. We reject this argument and affirm.
Following a motor vehicle accident, in which defendant sustained personal injuries, defendant was issued summonses for driving while under the influence of alcohol (DWI), N.J.S.A. 39:4-50, reckless driving, N.J.S.A. 39:4-96, careless driving, N.J.S.A. 39:4-97, and failure to wear a seatbelt, N.J.S.A. 39:3-76.2(f). At trial in municipal court, the State called Mark W. Maxwell, a forensic scientist, to testify about defendant's blood alcohol content (BAC). Maxwell testified that he did not actually perform the test but instead observed another chemist, Major Mitchell, examine defendant's blood sample with a gas chromatograph; Mitchell was being retrained and required supervision. Maxwell signed the laboratory report, certifying the accuracy of the testing.
Defendant also argued, on the basis of his own expert's testimony, that there was no scientific support for Maxwell's application of a standard deviation of only five percent to the results obtained from the gas chromatograph, which placed defendant's BAC at .081, and above the legal limit. Defendant's expert, the former Chief Forensic Scientist for the New Jersey State Police Forensic Laboratories, testified that a deviation figure between nine and ten percent should have been applied, and if so, the result would place defendant's BAC below the legal limit.
The municipal judge rejected defendant's argument that the State's failure to call Mitchell violated the Confrontation Clause. He also rejected the testimony of defendant's expert and convicted defendant of a per se DWI violation, N.J.S.A. 39:4-50. As a third time offender, defendant was sentenced to a 180-day jail term; the municipal judge also imposed a ten-year suspension of his operator's license and registration, a $1006 fine, and other *280 financial penalties. The other summonses were dismissed.
Defendant appealed to the Law Division. Judge Robert Neustadter rejected all of defendant's arguments, including the claim of a violation of the Confrontation Clause, in finding defendant guilty of DWI; he imposed the same jail sentence and other penalties as had the municipal judge.
Defendant appealed to this court, presenting the following arguments:
I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ADMITTING TESTIMONY AND THE LAB REPORT INTO EVIDENCE THROUGH A CHEMIST THAT DID NOT PERFORM THE TESTING, AS THE ADMISSION OF SUCH EVIDENCE VIOLATED DEFENDANT'S SIXTH AMENDMENT RIGHT TO CONFRONT WITNESSES UNDER THE UNITED STATES CONSTITUTION, AS WELL AS DEFENDANT'S CONCOMITANT RIGHTS UNDER THE NEW JERSEY CONSTITUTION.
II. THE TRIAL COURT ERRED, IN ACCEPTING THE STATE'S PROFFERED EVIDENCE REGARDING THE DEVIATION IN TESTING, THEREBY RULING THAT SUFFICIENT EVIDENCE EXISTED TO PROVE A PER SE VIOLATION OF DRIVING WHILE INTOXICATED UNDER N.J.S.A. 39:4-50a(2).
We find insufficient merit in Point II to warrant discussion in a written opinion. R. 2:11-3(e)(2). We also reject Point I for the following reasons.
We start with the fundamental premise that the Confrontation Clause contained in the Sixth Amendment, which applies to the states by way of the Fourteenth Amendment,[1] provides that "[i]n all criminal prosecutions, the accused shall enjoy the right. . . to be confronted with the witnesses against him." The Supreme Court of the United States has held that the Confrontation Clause bars the admission of "[t]estimonial statements of witnesses absent from trial" except "where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." Crawford v. Washington, 541 U.S. 36, 59, 124 S.Ct. 1354, 1369, 158 L.Ed.2d 177, 197 (2004).
The use of laboratory certificates was soon examined in the wake of Crawford's limitation on the use of out-of-court statements. In Melendez-Diaz v. Massachusetts, 557 U.S. ___, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), the Court considered whether the Confrontation Clause permitted, over defendant's objection, the admission of "affidavits reporting the results of forensic analysis[,] which showed that material seized by the police and connected to the defendant was cocaine." Id. at ___, 129 S.Ct. at 2530, 174 L.Ed.2d at 319.[2] The Court held that the certificates of analysis in question were testimonial because they constitute "solemn declaration[s] or affirmation[s] made for the purpose of establishing or proving some fact." Id. at ___, 129 S.Ct. at 2532, 174 L.Ed.2d at 321. As a result, the Court concluded *281 that "[t]he Sixth Amendment does not permit the prosecution to prove its case via ex parte out-of-court affidavits." Id. at ___, 129 S.Ct. at 2542, 174 L.Ed.2d at 332.
Melendez-Diaz has had no significant impact on prosecutions in this State. Prior to Melendez-Diaz, we recognized the accused's right to confront the author of a BAC certificate. See State v. Kent, 391 N.J.Super. 352, 375, 918 A.2d 626 (App. Div.2007); State v. Berezansky, 386 N.J.Super. 84, 89, 899 A.2d 306 (App.Div. 2006). And in 1987, the Legislature enacted a procedure that requires pretrial notice, and consent, before a laboratory certificate may be used at trial, N.J.S.A. 2C:35-19. The Supreme Court recognized that its holding in Melendez-Diaz would not adversely effect such procedures. Id. at ___ n. 3, 129 S.Ct. at 2534 n. 3, 174 L.Ed.2d at 323 n. 3. But new difficulties, not previously experienced by our courts, have followed in Melendez-Diaz's wake, in particular the constitutional sufficiency of a witness being called to testify about the laboratory results reached by another.
In 2010, the Supreme Court of New Mexico twice examined this "surrogate witness" problem. In State v. Bullcoming, 147 N.M. 487, 226 P.3d 1, 6 (2010), the Court considered the admission of testimony from one state analyst as to the results of a gas chromatography examination performed by another analyst, who was on unpaid leave. Because, in the court's view, the examination involved no "independent judgment" or "particular methodology," and just warranted the operator to transcribe the results from the gas chromatograph machine, it determined that any qualified analyst could testify as to its results; in essence, the court determined that the analyst on leave "was a mere scrivener, and [d]efendant's true `accuser' was the gas chromatograph machine which detected the presence of alcohol in [d]efendant's blood, assessed [d]efendant's BAC, and generated a computer print-out listing its results." Id. at 8-9. As a result, the court concluded that the witness could provide the machine's results because the information itself is not subject "to the constraints of the Confrontation Clause" and is something that experts in the field reasonably rely upon. Id. at 10. The Supreme Court of the United States granted certiorari to review that determination, Bullcoming v. New Mexico, ___ U.S. ___, 131 S.Ct. 62, 177 L.Ed.2d 1152 (2010), but has not yet ruled.
On the same day it decided Bullcoming, the Supreme Court of New Mexico found a violation of the Confrontation Clause in a slightly different circumstance in State v. Aragon, 147 N.M. 474, 225 P.3d 1280 (2010). The facts in Aragon reveal that police executed a search warrant and seized two clear plastic bags containing whitish, crystal substances. Id. at 1282. At trial, the prosecution called Eric Young, a chemist, who analyzed one bag, to testify not only about the contents of that bag but also the contents of the second bag, which was examined by another chemist, Andrea Champagne. Ibid. Over objection, the trial court admitted Champagne's report into evidence and allowed Young to testify about Champagne's findings. Id. at 1282-83. Relying on Melendez-Diaz, the court held that Champagne's report was testimonial, and its admission without Champagne's testimony would "open[ ] wide the door to avoidance of cross-examination." Id. at 1287 (quoting Palmer v. Hoffman, 318 U.S. 109, 114, 63 S.Ct. 477, 481, 87 L.Ed. 645, 650 (1943)). The Aragon Court also determined that Young's testimony about Champagne's findings was barred by the Confrontation Clause, holding that "[e]xperts and their opinions are not fungible when the testifying expert has not formed an independent conclusion from the underlying facts or data, but *282 merely restates the hearsay opinion of a non-testifying expert." Id. at 1291.
Our courts have yet to consider this surrogate-witness problem. After careful consideration, we have no hesitation in agreeing with Aragon that experts and their opinions are not fungible; to hold otherwise would make a mockery of the Confrontation Clause. We thus agree with the argument that the Confrontation Clause is not satisfied by calling just anyone to the stand to testify about laboratory tests or other scientific results. A "straw man" will not do. The State must provide a witness who has made an independent determination as to the results offered.[3] The right of cross-examination must be meaningful and is not satisfied when the State calls a witness whose knowledge is limited to the four corners of the laboratory certification produced and executed by another.[4]
Here, the State called Maxwell to prove defendant's BAC. Although Mitchell, and not Maxwell, operated the gas chromatograph in examining defendant's blood sample, Maxwell testified that he supervised the test. He claimed he had personal knowledge of the equipment and the manner in which the tests were performed and that he drew his own conclusions from the information provided by the gas chromatograph. Indeed, Maxwell executed the laboratory certification, thereby swearing that it "fairly and accurately documents the type and results of the analysis performed," that he is "the person responsible for the analysis and the conclusions set forth in the" report, that "the equipment used to perform the . . . analysis . . . was functioning properly," and that the "test procedures used are accurate, reliable, objective in nature, and performed on a routine basis within the laboratory." In addition, *283 Maxwell testified that he observed Mitchell conduct the tests and was with him "every step of the way" as if he performed the tests himself because Mitchell was being retrained and, consequently, was not allowed to test the samples by himself. The records simultaneously created during the testing supported Maxwell's assertions; Mitchell's initials appear next to the word "operator," and Maxwell's initials appear in the lower right hand corner of each page, memorializing that he observed "the physical movement of the sample into the vial." These records further demonstrate that the testing was a joint effort. Because he was the author of the laboratory certificate and because he supervised another's operation of the gas chromatograph, Maxwell was the appropriate person to be called to testify about the results of the testing of defendant's blood sample.
We lastly conclude that the State was not required to produce Mitchell in addition to Maxwell to satisfy defendant's confrontation rights. "[I]t is not the case, that anyone whose testimony may be relevant in establishing . . . authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." Melendez-Diaz, supra, 557 U.S. at ___ n. 1, 129 S.Ct. at 2532 n. 1, 174 L.Ed.2d at 322 n. 1. Maxwell was able to thoroughly respond to all questions posed about the testing and the meaning and significance of the results obtained. The State was not obligated to call Mitchell.
For all these reasons, we reject defendant's argument that the Confrontation Clause was violated in these circumstances.
Affirmed.
NOTES
[1] Pointer v. Texas, 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923, 927-28 (1965). In light of the disposition of this appeal, we need not consider whether our state constitution's Confrontation Clause, N.J. Const. art. I, ¶ 10, should be interpreted more expansively than its federal counterpart.
[2] Specifically, the Court considered a Massachusetts statute that permitted the admission of "certificates of analysis" as "prima facie evidence of the composition, quality, and the net weight of the narcotic analyzed." Id. at ___, 129 S.Ct. at 2531, 174 L.Ed.2d at 320 (quoting Mass. Gen. Laws, ch. 111, § 13).
[3] See United States v. Darden, 656 F.Supp.2d 560, 561 (D.Md.2009) (holding the right of confrontation was not violated by the testimony of a supervising toxicologist instead of the testimony of the lab technicians who actually conducted the tests on the blood); Vann v. State, 229 P.3d 197, 199-200 (Alaska App. 2010) (finding no violation where the lab technician testified as to all five samples but only tested three because she interpreted the data from other samples, and the conclusions were her own); Smith v. State, 28 So.3d 838, 853, 855 (Fla.2009) (finding no violation even though the State failed to present the biologists who performed the DNA tests because the testifying supervisor "formulated her own conclusions from the raw data"); Reddick v. State, 298 Ga.App. 155, 679 S.E.2d 380, 382 (2009) (finding no violation despite the fact that the testifying expert performed only one of two tests because she reviewed both tests, came to her own independent conclusion, and was entitled to base her opinion on data collected by others); People v. Johnson, 406 Ill.App.3d 114, 346 Ill.Dec. 264, 940 N.E.2d 264, 266-70 (2010) (finding no violation even though the testifying expert did not conduct the tests because she based her opinion on an independent review of the file).
[4] Our disposition of this appeal does not require a determination of whether, as held in Bullcoming, it is the gas chromatograph machine that is defendant's true accuser, and we, thus, need not determine whether the results obtained from such a machine are not constrained by the Confrontation Clause so long as someone with expertise as to its operation is called to testify. In State v. Chun, 194 N.J. 54, 146-47, 943 A.2d 114, cert. denied, ___ U.S. ___, 129 S.Ct. 158, 172 L.Ed.2d 41 (2008), the Court found insufficient for confrontation purposes the notion that the raw data generated by a diagnostic machine is the statement of the machine and not its operator. The Court's consideration of that notion, however, was rendered in the context of determining the admissibility of the results of the Alcotest, which, "reports a present, and not a past, piece of information or data" in the circumstance where "nothing that the operator does can influence the machine's evaluation of the information or its report of the data." Id. at 147, 943 A.2d 114. The record here does not permit a determination as to whether a similar conclusion may be reached about the gas chromatograph and its operation.