29 A.3d 320

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. JULIO HEISLER, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 28, 2011—Decided May 17, 2011.

---

[2] For sake of completeness, we note that, at oral argument before us, defendants' counsel represented that the County reduced its per-page copying rate at some point after our opinion and before the new legislation took effect.

400

Before Judges LISA, REISNER and OSTRER.

*Drew M. Hurley* argued the cause for appellant.

*William A. Guhl,* Assistant Prosecutor, argued the cause for respondent (*Geoffrey D. Soriano,* Somerset County Prosecutor,

attorney; *Nicole McGrath*, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

OSTRER, J.S.C. (temporarily assigned).

The principal issue in this appeal from a conviction after a trial de novo in the Law Division requires us to construe two provisions of *N.J.S.A.* 2C:35–19, the notice and demand statute in the Comprehensive Drug Reform Act, *N.J.S.A.* 2C:35–1 to *N.J.S.A.* 2C:36A–1.[1] First, the statute requires the State to notify a defendant at least twenty days before trial that it intends to offer into evidence a laboratory certificate (lab certificate) regarding the composition, quality and quantity of drugs, and must furnish defendant with a copy of the certificate and "all reports relating to the analysis in question." *N.J.S.A.* 2C:35–19c. Second, the defendant must object within ten days of receiving the State's notice of intent, or else waive any objections to the admission of the lab certificate. *Ibid.*

In this case, the State served defendant with a copy of the lab certificate and notice of intent to offer it into evidence, but the State did not furnish the related reports. More than ten days after receiving the certificate, defendant objected. The municipal court agreed with the State that defendant's objection was untimely, and allowed the certificate into evidence. On de novo review, the Law Division agreed and considered the lab certificate.

We hold that the trial court failed to comply with *N.J.S.A.* 2C:35–19 by admitting the lab certificate into evidence without testimony from its author. We so hold because the ten-day period in which a defendant must object to the admission into evidence of a lab certificate begins to run only after the State has served upon

---

[1] Since the adoption of the Comprehensive Drug Reform Act of 1987, two acts have been codified within it. *See N.J.S.A.* 2C:35A–1 to –8 (the "Anti–Drug Profiteering Act"); *N.J.S.A.* 2C:35B–1 to –17 (the "Drug Dealer Liability Act").

the defendant all related lab reports. Therefore, defendant's objection was timely.

## I.

After a trial in Bedminster Township Municipal Court on October 21, 2008, and a trial de novo in the Law Division on June 25, 2009, defendant was convicted of: (1) being under the influence of a controlled dangerous substance (CDS), *N.J.S.A.* 2C:35–10(b); (2) possession of drug paraphernalia, *N.J.S.A.* 2C:36–2; and (3) operating a vehicle while knowingly having CDS in his possession or in the motor vehicle, *N.J.S.A.* 39:4–49.1. He was acquitted of failing to signal before turning, *N.J.S.A.* 39:4–126. The court imposed fines and penalties, and suspended defendant's driving privileges for two years on the Title 39 conviction. A passenger in the vehicle was charged with various offenses but received a conditional discharge.

We review the record relating to the warrantless stop of defendant, the motion practice regarding the lab certificate, and the trial on the merits.

## A.

After a testimonial hearing, the municipal court denied defendant's motion to suppress the fruits of the stop.[2] The State's sole witness was Bedminster Police Officer John Dapkins. Counsel soon engaged in an exchange that would be relevant to an evidentiary issue in the trial itself regarding whether Dapkins could offer opinions about the presence of drugs. In reviewing his training and experience at the outset of his testimony, the prosecutor elicited that the officer was a certified drug recognition

---

[2] The hearing was held January 15, 2008. Thereafter, defendant sought leave to appeal from the municipal court's denial. The Law Division denied the motion, but ordered the municipal court to amplify its reasons for denying the motion, which the municipal court did before commencing trial on the merits on October 21, 2008.

expert. After defense counsel objected to the officer testifying as an expert because the State failed to provide advance notice, the prosecutor replied, "I'm not going to proffer him as [a] DRE [Drug Recognition Expert] in this case. I have a lab report."

Dapkins then testified about the basis for the motor vehicle stop. On September 13, 2007, at about 10:05 p.m., while he was parked in a gas station facing Washington Valley Road, he saw defendant drive past him going westbound toward the intersection with Route 202/206. Defendant turned his head rapidly to look at the officer, then looked straight ahead. Defendant then pulled into a left-turn lane at the intersection and waited at a red light. Dapkins pulled behind defendant and noticed that he had not engaged his directional signal, and only did so after Dapkins activated his own.

Dapkins also testified that there was other traffic in the vicinity. One vehicle turned into a parking lot before reaching the intersection. Another vehicle traveled eastbound on Washington Valley Road, then turned right on red, southbound on Route 202/206, while defendant and Dapkins waited at the light.

After the light turned green and defendant turned left onto Route 202/206 southbound, Dapkins activated his lights to initiate a motor vehicle stop. The on-board video of the stop begins by showing defendant waiting at the red light with his turn signal activated. Dapkins explained that when he activated his lights, the video automatically retrieved what transpired during the preceding thirty seconds.

Defendant testified at the suppression hearing and admitted that when he put on his directional signal, Dapkins was already behind him. He also admitted that his car was just a "couple of feet" before the intersection when he activated his signal.

Finding that the officer had a reasonable and articulable suspicion of a motor vehicle violation, the municipal court denied the suppression motion and upon de novo review the Law Division agreed.

## B.

Shortly after the suppression hearing, on January 21, 2008, defense counsel notified the municipal prosecutor that defendant objected to the introduction of the State's laboratory certificate, and demanded that the State disclose all underlying data and also produce at trial the scientist who analyzed substances seized at the motor vehicle stop. His letter noted that the State had provided only a "Certified Laboratory Report" on October 12, 2007. Defense counsel clarified the basis for his objection in a letter dated January 24, 2008, stating, "I object to the introduction of the drug certification on the grounds that the composition, quality, and quantity of the substance tested may be inaccurate and will, as stated previously, be contested at trial."

In a January 23, 2008 response to defense counsel's first letter, the municipal prosecutor refused to produce the lab scientist, insisting that the objection was untimely, as it was not made within ten days of receipt of the lab certificate. He also asserted that defense counsel failed to set forth an adequate basis for the objection.

In light of the State's position, defendant filed a motion on January 29, 2008 to exclude the lab certificate that the State had served, and to require the State to produce its lab scientist. Defendant also challenged the constitutionality of *N.J.S.A.* 2C:35–19.

The municipal court denied the motions on October 21, 2008. The court concluded that the State was not required to disclose more than the lab certificate in order to trigger the ten-day period for defendant's objection to admission of the certificate. The court reasoned that if the laboratory failed to forward underlying reports to the prosecutor, then the prosecutor was not obliged to forward more than the certificate to defendant. Since defendant failed to object within ten days, he waived objection to admission of the certificate. The municipal court also held that it lacked jurisdiction to address the constitutional challenge to the statute.

The Law Division also held that the objection was untimely, without expressly addressing defendant's argument that the State's disclosure of the lab certificate alone did not trigger the ten-day period for objection. The court rejected the constitutional challenge to the statute.

## C.

At the trial on the merits, the State called three witnesses: Dapkins; Bedminster patrol officer Thomas Valente, who joined Dapkins at the motor vehicle stop and assisted in the on-the-scene investigation; and Bedminster Detective Sergeant Craig Meyer, who testified to the chain of custody of the evidence seized and the transmittal of some items to the State Lab. The other principal piece of evidence was the videotape of the stop, which recorded various admissions by defendant and his passenger.

Valente interviewed defendant's passenger at the scene of the motor vehicle stop. He appeared nervous. Valente observed a flake of vegetation on the shirt of the passenger, who admitted it was marijuana. He also admitted that he possessed four "nickel" or $5 bags of marijuana in his pocket, and a partially smoked marijuana "blunt"—a cigar shell filled with marijuana—in his shoe.[3] Valente arrested the passenger and seized the bags and the blunt. Valente also participated in a search of the vehicle, which he stated produced two pieces of "plastic baggie" from the passenger compartment, and a clump of "Chore Boy," a copper-colored metal wool, from the trunk.

Meyer testified that the State Lab tested one of the four nickel bags of marijuana. It did not test for cocaine residue in the two plastic baggies, nor did it test the marijuana blunt. The court

---

[3] Defendant did not object to the admission into evidence of the passenger's out-of-court statements against interest, either as a violation of his right of confrontation, or as a violation of the rules against hearsay. That issue is not before us. But see *N.J.R.E.* 803(c)(25) (making inadmissible a statement against interest offered against the non-declarant-defendant "in a criminal action").

admitted the lab certificate into evidence over defense counsel's objection. The lab certificate confirmed that the contents of one of the bags seized from defendant's passenger contained marijuana weighing .19 grams.

The State offered Dapkins as an expert in drug recognition. The court overruled defense counsel's objection that the State was bound by its previous assurance, made at the suppression hearing, that it did not intend to offer Dapkins as a DRE "in this case." The court reasoned that the witness's qualifications had been disclosed. Also, although the State did not serve a report or statement of Dapkins's opinions, they were evident from his reporting and other discovery.

Dapkins testified that when he approached the vehicle, defendant's passenger was nervously smoking a cigarette, and there was a flake of suspected marijuana on his shirt. Dapkins observed that the passenger's eyelids were droopy and his eyes glassy.

Dapkins asked defendant to exit the vehicle. Upon doing so, Dapkins asserted that defendant tossed to the ground an empty "blunt tube"—an item of drug paraphernalia into which marijuana is typically placed for smoking. Dapkins conceded that it was not preserved in evidence. Upon advising defendant of his *Miranda* [4] rights, Dapkins observed defendant to be nervous, with "extreme reddening of his conjunctiva[,] . . . droopy eyelids and the glassy context of his eyes." However, Dapkins conceded that these observations were not recorded in his report.

Dapkins testified that he asked defendant if he and his passenger "were taking a low ride," which Dapkins understood to mean taking a car ride for the purpose of smoking marijuana. Defendant responded in the affirmative, according to Dapkins. Dapkins also observed that the blunt that Valente seized from the passen-

---

[4] *Miranda v. Arizona*, 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966).

ger had a smell of burnt marijuana, according to his experience and training.

Defendant executed a consent-to-search form, and, consistent with Valente's testimony, Dapkins testified that he seized a piece of Chore Boy from the trunk, and knotted plastic bags in the front passenger compartment that he suspected had been used to wrap cocaine.

In the videotape of the traffic stop, defendant admitted that there was marijuana in the car earlier in the evening, he had smoked a little bit and that he had just gone for a "low ride." He stated that a woman had ingested cocaine in his car a couple of days earlier, and that she must have left the plastic baggies in the vehicle. Before the search of the trunk, defendant alerted the officers that they would find the Chore Boy, which he said the woman had used when ingesting cocaine.

The municipal court found defendant guilty of being under the influence of CDS, possessing drug paraphernalia, and operating a vehicle with CDS in his possession or in the motor vehicle, and found him not guilty of failing to signal before turning. The court imposed sentence as described above.

Upon a trial de novo, the Law Division found that Dapkins's opinion was admissible as lay opinion. The court found defendant guilty anew of the three charges, and reimposed the same sentence that the municipal court had imposed. The sentence was stayed pending this appeal with the exception of the two-year driver's license suspension.

## II.

Defendant raises the following four points on appeal.

### POINT I.

THE STATE FAILED TO PROVE THAT THE STOP WAS VALID UNDER *STATE V. WILLIAMSON* SINCE THERE WAS NO PROOF THAT THERE WAS ANY OTHER TRAFFIC THAT MIGHT HAVE OBJECTIVELY AND REASONABLY BEEN AFFECTED BY THE BRIEF LACK OF A TURN

SIGNAL, THEREFORE, MR. HEISLER'S MOTION TO SUPPRESS SHOULD HAVE BEEN GRANTED.

*POINT II.*

THE LOWER COURTS ERRED IN ADMITTING INTO EVIDENCE THE STATE'S LABORATORY CERTIFICATE AND IN DENYING DEFENDANT'S MOTION TO REQUIRE THE STATE TO PRODUCE ITS FORENSIC TECH-NICIAN.

*POINT III.*

THE TRIAL COURT ERRED IN ALLOWING OFFICER DAPKINS TO TES-TIFY AS A DRUG RECOGNITION EXPERT SINCE THE STATE HAD PREVIOUSLY STATED ON THE RECORD THAT IT WAS NOT CALLING HIM AS AN EXPERT AND FURTHER DUE TO THE STATE'S FAILURE TO COMPLY WITH *R.* 7:7–7b(11) AND *R.* 3:13–3C(9).

*POINT IV.*

THE TEN-DAY TIME LIMIT OF *N.J.S.A.* 2C:35–19c AND THE REQUIRE-MENT THEREIN THAT A DEFENDANT AFFIRMATIVELY CHALLENGE THE STATE'S LAB REPORT IS UNCONSTITUTIONAL AS IT INFRINGES ON A DEFENDANT'S SIXTH AMENDMENT RIGHTS.

We will first address points I and III, regarding the denial of the motion to suppress, and the motion to exclude Dapkins's opinion testimony. We will then turn to the issue of the court's admission of the lab certificate.

### A.

■ We perceive no error in the Law Division's denial of the motion to suppress. We do not weigh the evidence anew, but determine whether sufficient credible evidence in the record supports the trial court's decision. *State v. Johnson,* 42 *N.J.* 146, 157, 199 *A.*2d 809 (1964); *State v. Cerefice,* 335 *N.J.Super.* 374, 384, 762 *A.*2d 668 (App.Div.2000).

■ Police may conduct an investigatory stop if they have a reasonable suspicion, based on specific and articulable facts, that a person they encounter was involved in unlawful activity, including a motor vehicle violation. *State v. Golotta,* 178 *N.J.* 205, 213, 837 *A.*2d 359 (2003); *State v. Puzio,* 379 *N.J.Super.* 378, 381, 878 *A.*2d 857 (App.Div.2005) (police may perform investigative stop for

suspicion of a traffic violation). In this case, Dapkins suspected that defendant had violated *N.J.S.A.* 39:4–126, which requires a driver to signal a turn when "traffic may be affected by such movement." *See State v. Williamson,* 138 *N.J.* 302, 303, 650 *A.*2d 348 (1994). When traffic may be affected, the driver must signal at least 100 feet before turning. *N.J.S.A.* 39:4–126.

To prove a violation, the State need not show that the signal did in fact affect traffic, but only that it had "the potential of doing so." *State v. Moss,* 277 *N.J.Super.* 545, 547, 649 *A.*2d 1349 (App.Div.1994). "Other traffic" can include a police vehicle. *State v. Williamson, supra,* 138 *N.J.* at 304, 650 *A.*2d 348; *State v. Moss, supra,* 277 *N.J.Super.* at 547, 649 *A.*2d 1349 (reasonable suspicion of traffic violation when driver failed to signal and police vehicle and other light traffic were nearby).

Moreover, on a motion to suppress, "the State need prove only that the police lawfully stopped the car, not that it could convict the driver of the motor-vehicle offense." *State v. Williamson, supra,* 138 *N.J.* at 304, 650 *A.*2d 348; *see also State v. Jones,* 326 *N.J.Super.* 234, 239, 741 *A.*2d 104 (App.Div.1999). Thus, it is inconsequential that the defendant was ultimately acquitted of the motor vehicle violation. The issue is whether the officer had a reasonable and articulable suspicion of a violation before the stop.

We are satisfied that there was sufficient support for the Law Division's finding that Dapkins had a reasonable and articulable suspicion that defendant had violated a motor vehicle law. Defendant admitted that he did not signal as he approached the Washington Valley Road and Route 202/206 intersection. He signaled only when he was within a few feet of stopping, when Dapkins was already behind him and signaling a turn himself. The trial court found, based on sufficient credible evidence, that the officer reasonably believed that defendant's actions may have affected other vehicles. Also, the evidence supported a reasonable and articulable suspicion that the failure to signal may have affected Dapkins's own vehicle.

## B.

We also reject defendant's argument that the court erred when it refused to exclude Dapkins's opinion testimony. The State did not formally notify the defense that it intended to offer Dapkins as an expert at the trial on the merits, nor did it serve an expert report or a separate summary of the expert opinion that the State intended to offer through Dapkins. *See R.* 7:7–7(b)(11). Instead, at the suppression hearing nine months before trial, the prosecutor stated that he did not intend to use Dapkins as an expert "in this case." However, the State did disclose Dapkins's qualifications, and his DRE certification.

Defendant argues: (1) the State was judicially estopped from presenting Dapkins as an expert, given the prosecutor's statements at the suppression hearing; (2) the discovery rules required the court to bar Dapkins's opinion testimony; and (3) it was error for the Law Division to accept Dapkins's testimony as lay opinion. We are unpersuaded.

▬▬ The State was not barred by principles of judicial estoppel from introducing Dapkins's expert testimony, notwithstanding the prosecutor's statement of intent at the suppression hearing. The doctrine bars "a party from taking a position contrary to the position he [or she] has already *successfully espoused* in the same or prior litigation." *McCurrie v. Town of Kearny,* 174 *N.J.* 523, 533, 809 *A.*2d 789 (2002) (emphasis added). "[A] position has been 'successfully asserted' if it has helped form the basis of a judicial determination." *Cummings v. Bahr,* 295 *N.J.Super.* 374, 387, 685 *A.*2d 60 (App.Div.1996). Yet, in denying the suppression motion, the court did not rely on the prosecutor's decision not to use Dapkins as a drug recognition expert. The suppression hearing focused not on drug recognition, but on Dapkins's observations of motor vehicles. Therefore, judicial estoppel principles do not apply.

▬▬ Nor do we believe that the discovery rules compelled exclusion of Dapkins's opinion testimony. A trial court is vested

with broad discretion to determine what remedy, if any, it should impose because of a failure to make expert disclosures. *See State v. Marshall,* 123 *N.J.* 1, 130, 586 *A.*2d 85 (1991) (expert testimony barred), *cert. denied,* 507 *U.S.* 929, 113 *S.Ct.* 1306, 122 *L.Ed.*2d 694 (1993); *State v. LaBrutto,* 114 *N.J.* 187, 204–06, 553 *A.*2d 335 (1989) (expert testimony permitted); *State v. Toro,* 229 *N.J.Super.* 215, 222–24, 551 *A.*2d 170 (App.Div.1988) (expert testimony permitted), *certif. denied,* 118 *N.J.* 216, 570 *A.*2d 973 (1989), *overruled on other grounds, State v. Velez,* 119 *N.J.* 185, 187, 574 *A.*2d 445 (1990). Court Rules allow, but do not require, a court to bar an expert's testimony if discovery is withheld. *R.* 7:7–7(b)(11); *R.* 3:13–3(c)(9) (stating that expert testimony "may" be barred).

In exercising its discretion, the court may consider (1) whether the party who failed to disclose intended to mislead; and (2) whether the aggrieved party was surprised and would be prejudiced by the admission of expert testimony. *State v. LaBrutto, supra,* 114 *N.J.* at 205, 553 *A.*2d 335; *see also* Pressler & Verniero, *Current N.J. Court Rules,* Comment to *R.* 3:13–3 (2011) ("The State's failure to comply with the requirement . . . will not preclude the testimony if defendant is not thereby prejudiced."). "Prejudice" in this context refers not to the impact of the testimony itself, but the aggrieved party's inability to contest the testimony because of late notice.

In this case, the municipal court found no prejudice, inasmuch as the substance of Dapkins's testimony was evident from his police reporting and his video-recorded observations at the scene, which were disclosed. Also, although defense counsel was genuinely and understandably surprised by the State's decision to offer Dapkins as an expert at trial, the court did not find that the prosecutor intended to mislead defense counsel.

Consequently, we find no mistaken exercise of discretion by the municipal court in admitting Dapkins's expert testimony, notwithstanding the discovery violation. On that basis, we affirm the Law Division's decision to admit Dapkins's opinion testimony, without addressing whether Dapkins's testimony was, alternative-

ly, admissible as lay opinion, as the Law Division found. *See State v. McLean*, 205 *N.J.* 438, 465–60, 16 *A.*3d 332 (2011) (describing the requirements for admission of police officer's lay opinion). We are free to affirm the trial court's decision on grounds different from those relied upon by the trial court. *See Isko v. Planning Bd. of Livingston*, 51 *N.J.* 162, 175, 238 *A.*2d 457 (1968), *abrogated on other grounds, Commercial Realty & Res. Corp. v. First Atl. Props. Co.*, 122 *N.J.* 546, 565, 585 *A.*2d 928 (1991).

### C.

We find persuasive defendant's argument that he was not obliged to object to the introduction of the lab certificate until ten days after receiving supporting lab reports and data. To rule otherwise would undermine the dual goals of the notice and demand statute, *N.J.S.A.* 2C:35–19: (1) to enable defendants to make informed decisions regarding whether to object; and (2) to conserve time and resources of State Laboratory personnel by avoiding unnecessary court appearances. Because defendant objected before the State furnished him with the supporting materials, his objection was timely. Therefore, the court erred in admitting the lab certificate without testimony from the lab analyst and an opportunity for cross-examination.

We begin our analysis with the statutory language itself. *State v. Bridges*, 131 *N.J.* 402, 405, 621 *A.*2d 1 (1993). The notice and demand provision states:

Whenever a party intends to proffer in a criminal or quasi-criminal proceeding, a certificate executed pursuant to this section, notice of an intent to proffer that certificate and all reports relating to the analysis in question, including a copy of the certificate, shall be conveyed to the opposing party or parties at least 20 days before the proceeding begins. An opposing party who intends to object to the admission into evidence of a certificate shall give notice of objection and the grounds for the objection within 10 days upon receiving the adversary's notice of intent to proffer the certificate.

[*N.J.S.A.* 2C:35–19c.]

We find that the notice and demand provision is ambiguous because it establishes one deadline for the State to serve a lab certificate and supporting reports, and a separate deadline for a

defendant to serve a notice of objection to the lab certificate without mentioning the reports. The State argues, inasmuch as the supporting data need be disclosed only twenty days before trial, the State may trigger a defendant's ten-day objection period by disclosing only the notice of intent to proffer the certificate (NOI or notice of intent), so long as it does so more than twenty days before trial. On the other hand, defendant asks us to construe the sentence establishing the twenty-day deadline to require the State to release supporting data together with the NOI regardless of when the NOI is released.

In resolving these competing interpretations, we must "look beyond [the provision's] plain language to determine the Legislature's intent." *State v. Bridges, supra,* 131 *N.J.* at 407, 621 *A.*2d 1. In doing so, we conclude that defendant's interpretation finds support in related provisions of the notice and demand statute, legislative committee commentary, and judicial interpretations of the notice and demand statute.

The State's interpretation is at odds with the specific purpose of the notice and demand statute. In construing a provision of the Comprehensive Drug Reform Act that is susceptible to differing constructions, we are bound to interpret it to "further ... the special purposes of the particular provision involved." *N.J.S.A.* 2C:1–2c. In addition to setting deadlines for (a) the State's service of the NOI and supporting materials, and (b) defendant's service of an objection, section 19c establishes a test for admissibility of the lab certificate. According to its plain language, the provision places the burden on a defendant to demonstrate "specific grounds" for his or her objection to admitting the lab certificate.

Whenever a notice of objection is filed, admissibility of the certificate shall be determined not later than two days before the beginning of the trial. A proffered certificate shall be admitted in evidence unless it appears from the notice of objection and specific grounds for that objection that the composition, quality, or quantity of the substance submitted to the laboratory for analysis will be contested at trial.

[*N.J.S.A.* 2C:35–19c.]

A defendant's ability to present "specific grounds" to challenge the accuracy of the laboratory analysis necessarily depends on his or her timely access to the underlying laboratory data.

We recognize that our Supreme Court has construed the "specific grounds" language to avoid constitutional infirmity, and shifted to the State the burden to show pre-trial, "the reliability of the scientific methodology underlying the report," justifying the report's admission without a witness. *State v. Miller,* 170 *N.J.* 417, 432–36, 438, 790 *A.*2d 144 (2002); *see also State v. Kent,* 391 *N.J.Super.* 352, 381, 918 *A.*2d 626 (App.Div.2007) (recognizing that the Court in *Miller* "excised" the provision allocating any burden to defendant). Also, the Supreme Court subsequently clarified that, in accord with the Confrontation Clause, the "trial court ultimately will determine whether a genuine contest exists between the parties in respect of the proffered certificate that would require production of the analyst." *State v. Simbara,* 175 *N.J.* 37, 48–49, 811 *A.*2d 448 (2002). "If . . . defendant maintains his right to confront the analyst, then he shall be entitled to do so by cross-examining [him or] her before the trier of fact." *Id.* at 49, 811 *A.*2d 448.[5] However, in assessing the Legislature's intent regarding the issue before us, we examine the statute as enacted. The Legislature's allocation of the burden of proof to defendant illuminates the Legislature's apparent intent to provide defendant with the supporting lab materials before he or she was obliged to object.

---

[5] After *Simbara,* the United States Supreme Court reshaped the Confrontation Clause landscape, starting with *Crawford v. Washington,* holding that the Confrontation Clause barred admission of "testimonial" hearsay without the opportunity to cross-examine. 541 *U.S.* 36, 68, 124 *S.Ct.* 1354, 1374, 158 *L.Ed.*2d 177, 203 (2004). In *Melendez–Diaz v. Massachusetts,* the Supreme Court held that a defendant had a Constitutional right to confront the author of a lab certificate similar to the certificate described in section 19c of our Act. —— *U.S.* ——, ——, 129 *S.Ct.* 2527, 2532, 174 *L.Ed.*2d 314, 321–22 (2009). Also, the Court held that at least some forms of notice and demand statutes pass constitutional muster. *Id.* at ——, 129 *S.Ct.* at 2541 n. 12, 174 *L.Ed.*2d at 331–332 n. 12.

The Court in *Miller* recognized as persuasive the Assembly Judiciary Committee's Commentary to the Comprehensive Drug Reform Act (Act), which expressed the intent that a defendant receive the supporting materials so he or she could intelligently and knowingly decide whether to object.

> Subsection c. of this section prescribes the [notification] procedures to be followed when a party intends to use a laboratory certificate as evidence.... *Along with this notice,* the offering party must include not only a copy of the actual proffered certificate, but also all reports relating to the laboratory analysis in question. *This procedure will ensure complete and prompt disclosure of all relevant information and will thereby allow the opposing party a fair opportunity to make an informed decision whether to contest the admissibility of the certificate.*
>
> [*State v. Miller, supra,* 170 *N.J.* at 430, 790 *A.*2d 144 (quoting Assembly Judiciary Committee, Commentary to the Comprehensive Drug Reform Act (November 23, 1987) (as reprinted in Cannel, *New Jersey Criminal Code Annotated,* Comment on *N.J.S.A.* 2C:35–19 (2001–02)) [hereinafter Committee Commentary]) (emphasis added).]

As the *Miller* Court recognized, "the slight amount of information provided in the form lab certificate is the reason for the statutory requirement that the notes and data underlying the report be provided to a defendant." *Id.* at 437, 790 *A.*2d 144. Without the notes and data, the decision cannot be a knowing or intelligent one. *Ibid.*

█ In *Simbara,* the Supreme Court recognized that the State's disclosure of the NOI separate from disclosure of the underlying data was inconsistent with the statutory scheme:

> Defendant asserts that initially the prosecutor did not convey any notes prepared by the analyst or the underlying data related to the test results contained in the certificate. If so, that omission would have been inconsistent with the requirement imposed on a prosecutor to provide an accused with a copy of not only the certificate, but "all reports relating to the analysis in question[.]" *N.J.S.A.* 2C:35–19c.
>
> [*State v. Simbara, supra,* 175 *N.J.* at 43–44, 811 *A.*2d 448.]

Also, the *Simbara* Court noted that the Attorney General's Office acknowledged its obligation to disclose the data simultaneously memorandum stated, " 'If the prosecutor intends to proffer a sworn laboratory certificate at trial pursuant to *N.J.S.A.* 2C:35–19, the prosecutor must, pursuant to the literal requirements of the

statute, convey to defense counsel a copy of the certificate *along with* all of the foregoing documents.' " *Id.* at 44, 811 *A.*2d 448 (quoting Memorandum from Peter C. Harvey, First Assistant Attorney General, to County Prosecutors at 2 (Aug. 22, 2002) [hereinafter AG Memorandum] (emphasis added)).[6]

In *State v. Berezansky,* 386 *N.J.Super.* 84, 94–95, 899 *A.*2d 306 (App.Div.2006), we drew an analogy from the notice and demand statute in determining that a defendant had a right to confront the author of a laboratory certificate reporting the results of a blood alcohol test. In *Berezansky,* as in this case, the State did not provide requested documentation regarding the laboratory's analysis. We found that the State's failure denied the defendant an adequate opportunity to challenge the laboratory certificate.

> By analogy, *N.J.S.A.* 2C:35–19c requires the prosecutor to provide a defendant with all documentation relating to a proffered lab certificate as a condition for admission of that certificate attesting to the identification of a controlled dangerous substance. The purpose of that requirement is to "allow the opposing party a fair opportunity to make an informed decision whether to contest the admissibility of the certificate."
>
> [*Id.* at 94–95, 899 *A.*2d 306 (quoting *State v. Miller, supra,* 170 *N.J.* at 430, 790 *A.*2d 144).]

The two deadline provisions must be harmonized, to give effect to both of them and to avoid an absurd result. *See Burnett v. Cnty. of Bergen,* 198 *N.J.* 408, 421, 968 *A.*2d 1151 (2009) (stating that each part of a section of a statute should be construed together to provide "a harmonious whole"). If, as the State contends in this case, service of the NOI alone months before trial triggers the ten-day period for lodging an objection, and if a defendant fails to object, then there would be little purpose in compelling the State thereafter to produce the supporting data twenty days before trial. The defendant would have waived any

---

6 Although the statute only requires disclosure of the lab reports at least twenty days before trial, the discovery rules may oblige the State to disclose them sooner. *See Rule* 3:13–3(b)(3) and *Rule* 7:7–7(b)(4) (requiring disclosure of "results or reports ... of scientific tests or experiments made in connection with the matter or copies" thereof that the prosecutor controls or possesses). We note but do not decide that issue.

objection to admission of the certificate. Yet, the statute, without exception, mandates disclosure of "all reports relating to the analysis in question" at least twenty days before trial. The more reasonable reading is that the mandated disclosure of the underlying reports was designed to precede, and inform, the decision whether to object.

Adopting the State's position in this case would also undermine the broader goal of the notice and demand statute to vindicate a defendant's confrontation right while avoiding unnecessary and burdensome court appearances by laboratory personnel. *See* Committee Commentary, *supra* ("This provision *[N.J.S.A.* 2C:35–19] is intended to alleviate the burden imposed on State and county laboratory facilities by the necessity of having their employees travel throughout the State to make perfunctory court appearances in cases where the substance of their testimony is not genuinely in dispute."). If defendants are required to choose between (1) waiving their right of confrontation before receiving data that might support a challenge to lab results, or (2) objecting without laboratory data that might persuade them that a court appearance is unnecessary, then defendants presumably would choose to object out of caution.

While we have discouraged a defendant's "pro forma insistence" that the author of a lab certificate appear in court, we have recognized the defendant's right of confrontation. *State v. Kent, supra,* 391 *N.J.Super.* at 380, 918 *A.*2d 626; *see also id.* at 385–90, 918 *A.*2d 626 (Stern, J., concurring) (concluding that the Supreme Court would apply the Confrontation Clause protections to defendants in prosecutions for quasi-criminal violations involving driving while intoxicated). A defendant need not justify his or her decision to exercise his or her constitutional right of confrontation. An accused is entitled to confront the lab certificate's author, so long as a timely objection is made. *State v. Rehmann,* 419 *N.J.Super.* 451, 455, 17 *A.*3d 278 (App.Div.2011) ("Prior to *Melendez–Diaz,* we recognized the accused's right to confront the author of a BAC certificate."); *State v. Kent, supra,* 391 *N.J.Su-*

*per.* at 375, 918 *A.*2d 626 (holding that "defendant was constitutionally entitled to cross-examine the declarants who authored" laboratory reports and blood sample certificate); *id.* at 382, 918 *A.*2d 626 (stating that defendant may waive his confrontation right by failing to make timely demand for the author's appearance).

The effective operation of the notice and demand statute depends in part on the presumption that, as a practical matter, "in the majority of cases a defendant will not challenge the certificate 'either because the focus of the defense is otherwise or because he or she may not wish to suffer the piling-on effect of a live witness when there is no true contest over the nature of the tested substance.' " *State v. Simbara, supra,* 175 *N.J.* at 49, 811 *A.*2d 448 (quoting *State v. Miller, supra,* 170 *N.J.* at 431, 790 *A.*2d 144). However, if the defendant is unable to determine, because of the absence of laboratory data, whether there is a basis to wage a "true contest" over the nature of the substance, then the defendant may lodge a protective objection. That would undermine the statute's efficiency goals.

To harmonize the two deadlines included in section 19c, we conclude that the ten days within which a defendant must object or waive begins to run only after the State has disclosed the supporting data as well as the NOI. Thus, if the State fails to waiver of the right to confront the report's author. If the author does not appear as a witness at trial, admission of the lab certificate violates defendant's confrontation rights.

Applying these principles to this case, the State failed to comply with *N.J.S.A.* 2C:35–19. Defendant lodged a timely objection to admission of the lab certificate, inasmuch as the State failed to disclose the supporting reports. Therefore, the court erred in admitting the lab certificate without live testimony of the lab analyst.[7]

---

[7] In light of our conclusion, we need not reach defendant's constitutional challenge to the statute, although we note that our Supreme Court has upheld the constitutionality of the statute, *State v. Miller, supra,* 170 *N.J.* at 436, 790

## D.

██ We next address the consequences of excluding the lab certificate in this case. Although we have determined that admission into evidence of the lab certificate was error, we affirm the conviction for possession of drug paraphernalia, *N.J.S.A.* 2C:36–2. Defendant was charged with possessing a plastic "baggie piece containing suspected Cocaine residue." The lab certificate did not address whether cocaine residue was sufficient credible evidence consisting of Dapkins's opinion regarding the use of such plastic baggies, as well as the admissions of defendant regarding the "baggie."

 However, we reverse defendant's convictions for being under the influence of CDS, *N.J.S.A.* 2C:35–10(b), and for operating a vehicle while knowingly having CDS in his possession or in the motor vehicle, *N.J.S.A.* 39:4–49.1. Both convictions may have rested in part on the lab certificate. Notwithstanding the State's remaining proofs, affirmance of the two remaining convictions would require us to conclude that the admission of the lab certificate was harmless beyond a reasonable doubt. "[B]ecause the improper admission of hearsay evidence implicates the confrontation clause, we consider whether it was 'harmless beyond a reasonable doubt.'" *State v. Briggs*, 279 *N.J.Super.* 555, 565, 653 *A.*2d 1139 (App.Div.) (quoting *Delaware v. Van Arsdall*, 475 *U.S.* 673, 684, 106 *S.Ct.* 1431, 1438, 89 *L.Ed.*2d 674, 686 (1986)), *certif. denied*, 141 *N.J.* 99, 660 *A.*2d 1198 (1995). Moreover, we have no way of knowing whether cross-examination of the lab analyst would have undermined the conclusions in the lab certificate. "'[A]n assessment of harmlessness cannot include consideration of whether the witness's testimony would have been unchanged, ... such an inquiry would obviously involve pure speculation.'" *State v. Ogburne*, 235 *N.J.Super.* 113, 119, 561 *A.*2d 667 (App.Div.1989)

*A.*2d 144, and the United States Supreme Court has held that notice and demand statutes may pass muster post-*Crawford*. *Melendez–Diaz v. Massachusetts, supra,* —— *U.S.* at ——, 129 *S.Ct.* at 2541 n. 12, 174 *L.Ed.*2d at 331–32 n. 12.

(quoting *Coy v. Iowa*, 487 *U.S.* 1012, 1021–22, 108 *S.Ct.* 2798, 2803, 101 *L.Ed.*2d 857, 867 (1988)).

We remand to the municipal court to determine upon the remaining record whether the State has proved beyond a reasonable doubt that defendant committed either of the two remaining offenses.[8] We recognize that there was circumstantial evidence, as well as significant admissions by defendant and his passenger, that may convince the trier of fact of defendant's guilt, notwithstanding the exclusion of the lab certificate. *See Melendez–Diaz v. Massachusetts, supra,* —— *U.S.* at ——, 129 *S.Ct.* at 2542 n. 14, 174 *L.Ed.*2d at 332–33 n. 14 (suggesting, in context of harmless error analysis, that circumstantial evidence could establish the nature of the substance absent inadmissible hearsay lab report). The municipal court, which had the opportunity to assess the demeanor of the testifying officers, shall review the remaining record, and determine whether the State has met its burden to prove: (1) the defendant was under the influence of CDS; and/or (2) the defendant operated a motor vehicle with CDS in his possession or in the motor vehicle.

However, the State shall not have the opportunity to call the lab analyst and to cure the initial error of admitting the lab certificate. "A remand is inappropriate in order to afford the State the opportunity to provide proofs it should have provided in the initial trial which were necessary to support a conviction." *State v. McLendon*, 331 *N.J.Super.* 104, 108, 751 *A.*2d 148 (App. Div.2000).

---

[8] We remand to the municipal court, as opposed to the Law Division, for two reasons. First, the municipal court was able to assess the demeanor of witnesses and is well-situated to decide, based on the remaining record, whether the State has met its burden. *Cf. State v. Johnson, supra,* 42 *N.J.* at 157, 199 *A.*2d 809 (stating that the Law Division must give "due, although not necessarily controlling, regard to the opportunity of the magistrate to judge the credibility of the witnesses"). Second, the structure of our Rules affords defendant two chances to secure acquittal. Were we to remand to the Law Division, defendant would be afforded only one chance once the record is stripped of the lab certificate. *See R.* 3:23–8(a).

In *State v. Sparks,* 261 *N.J.Super.* 458, 460, 619 *A.*2d 257 (App.Div.1993), the municipal court improperly admitted a lab certificate in a marijuana possession case. Because it was disclosed late, in violation of section 19c, we affirmed the Law Division's determination that the municipal court should have barred admission of the certificate. *Ibid.* However, we held that the Law Division erred in remanding the case for a new trial where the State could submit the report with sufficient advance notice to allow defendant to object, consistent with section 19c. *Id.* at 460–61, 619 *A.*2d 257. We therefore required that the matter be decided "solely on the remaining testimony." *Id.* at 461, 619 *A.*2d 257. Inasmuch as there was insufficient evidence remaining upon which to convict, we reversed and remanded for entry of a judgment of acquittal. *Id.* at 462, 619 *A.*2d 257.

However, in this case, aside from the lab certificate, there is significant evidence remaining in the record tending to show that defendant was under the influence of marijuana, and that there was marijuana in the vehicle. *See State v. Hardy,* 211 *N.J.Super.* 630, 634, 512 *A.*2d 545 (App.Div.1986) (noting it was error to remand a case to permit the State to supplement the record with evidence to support the admission of breathalyzer results, but remanding the matter for a determination on the evidence independent of the breathalyzer evidence). Consequently, we remand for further proceedings consistent with this opinion.

Affirmed in part, and reversed and remanded in part.