# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2703-17T5

IN THE MATTER OF THE CIVIL
COMMITMENT OF S.M.,
SVP-308-03.

_____

Argued March 12, 2019 – Decided April 8, 2019

Before Judges Hoffman, Suter and Geiger.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. SVP-308-03.

Susan R. Silver, Assistant Deputy Public Defender, argued the cause for appellant S.M. (Joseph E. Krakora, Public Defender, attorney; Susan R. Silver, of counsel and on the briefs).

Stephen J. Slocum, Deputy Attorney General, argued the cause for respondent State of New Jersey (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Stephen J. Slocum, on the brief).

PER CURIAM

Appellant S.M., a sex offender who was civilly committed in 2003 to the

Special Treatment Unit (STU) pursuant to the Sexually Violent Predator Act

(SVPA), N.J.S.A. 30:4-27.24 to -27.38, appeals from a January 9, 2018 Law

Division judgment continuing his commitment after a review hearing. We affirm.

Appellant's lengthy history of sexual offenses was recounted in this court's prior opinions upholding his commitment under the SVPA.[1] In 1986, appellant sexually assaulted an adult female at knifepoint in upstate New York, resulting in his conviction for attempted rape, assault and criminal possession of a weapon. In 1988, appellant was charged with sexually assaulting a different victim at knifepoint in Buffalo, New York, and entered into a plea agreement to a lesser charge of attempted burglary. In 1993, he was charged with aggravated sexual assault of another woman at knifepoint and pleaded guilty to a lesser charge of possession of a weapon for an unlawful purpose.

In 1997, appellant pleaded guilty and was convicted of the predicate offense of aggravated sexual assault, amended to sexual assault, of another victim, N.J.S.A. 2C:14-2(a)(3), along with a drug possession count, N.J.S.A.

---

[1] See In re Civil Commitment of S.B.M., No. A-6426-04 (App. Div. Apr. 16, 2007) (upholding appellant's initial commitment); In re Civil Commitment of S.B.M., No. A-2384-07 (App. Div. Sept. 3, 2008) (remanding the matter to a different judge for hearing); In re Civil Commitment of S.B.M., No. A-1703-08 (App. Div. June 22, 2009) (upholding appellant's continued commitment); In re Civil Commitment of S.M., No. A-2105-09 (App. Div. June 2, 2010) (same); In re Civil Commitment of S.M., No. A-2623-12 (App. Div. Jan. 24, 2014) (same); In re Civil Commitment of S.M., No. A-0027-15 (App. Div. Dec. 7, 2015) (same).

2C:35-10(a)(1).  He was sentenced to a ten-year term at the Adult Diagnostic and Treatment Center (ADTC).  Appellant does not contest he has engaged in sexual offenses rendering him eligible for civil commitment under the SVPA.

Substantial motion practice preceded the most recent annual review hearing from which appellant now appeals.  Appellant served respondent with a notice in lieu of subpoena seeking discovery of all documents relating to the creation of the Therapeutic Community at the STU.[2]  The trial court granted respondent's motion to quash the subpoena, but ordered respondent to provide appellant with any Therapeutic Community training materials or documents concerning the Therapeutic Community given to STU residents.  The trial court found the majority of the documents sought were not relevant to the review hearing.  The trial court noted appellant could challenge the propriety of the Therapeutic Community in a separate action.

---

[2]  In addition to numerous other documents, the notice in lieu of subpoena specifically requested production of the following: research that was considered on the effectiveness of Therapeutic Communities in treating sex offenders; internal memoranda about the establishment and governance of the Therapeutic Community at the STU; and internal correspondence among STU staff about the creation and maintenance of the Therapeutic Community.

A-2703-17T5

Thereafter, appellant served respondent with interrogatories and Dr. Tarmeen Sahni[3] with a subpoena for oral testimony and production of the following information and documents: (1) "[r]esearch on which you relied in concluding Therapeutic Communities are effective therapeutic interventions for sex offenders;" (2) "[r]esearch on which you relied in concluding that [appellant] is highly likely to sexually reoffend if not confined to the [STU];" (3) "[r]esearch on which you relied in concluding that [appellant] must attend the Therapeutic Community at the STU in order to reduce his risk below the statutory threshold;" (4) "[t]he raw data for any tests you conducted of [appellant] in assessing his risk;" and (5) "[r]esearch on which you relied in determining what it means to complete treatment."

Respondent advised appellant the discovery requests would not be answered, contending the discovery sought was not authorized by the SVPA or any court rule and the trial court denied appellant's prior request for many of these same documents. Appellant moved to compel the requested discovery. The trial court denied the motion, stating there is no right to depositions or interrogatories in SVPA proceedings. The trial court noted Rule 4:74-7(d)

---

[3] Dr. Sahni authored the most recent Treatment Progress Review Committee ("TPRC") report. She did not testify during the review hearing.

provides separate discovery requirements for civil commitment hearings. The trial court also noted the same discovery issue was frequently raised during the past sixteen years and rejected each time. We denied appellant's motion for leave to appeal from the two discovery orders.

The trial court conducted a two-day review hearing in December 2017. The State presented two expert witnesses at the review hearing: Dr. Dean M. DeCrisce, a psychiatrist, and Dr. Nicole Paolillo, a psychologist who is a member of the TPRC at the STU. Appellant presented the expert testimony of a psychologist, Dr. Christopher P. Lorah. All of the mental health experts were deemed qualified to offer their opinions, and their written reports were admitted into evidence without objection. Appellant did not testify.

Dr. DeCrisce examined appellant and issued a report containing his findings. He relied, in part, on information from prior evaluations, but formed his own diagnostic impressions and opinions. Dr. DeCrisce diagnosed appellant with Antisocial Personality Disorder and Other Specified Paraphilic Disorder (Nonconsent). These dual diagnoses "contribute[] to the overall offense dynamics of essentially an individual that takes what he wants when he wants it whenever he wants it." Notably, appellant admitted in the past to arousal to fear

of his victims, the desire to punish and humiliate a victim, and masturbating to fantasies of rape. Appellant also exhibited impulsivity and poor judgment.

Dr. DeCrisce noted appellant was hostile and resistant in treatment and did not gain mastery of any treatment concepts while incarcerated at the ADTC. Early on during his commitment to the STU, appellant was hostile, verbally assaultive towards peers, and uncooperative and was placed on treatment probation in 2006 to 2007. He has, however, made progress over the years. In 2008, he was recommended for Phase III of treatment, appeared less hostile than in the past, and had gained some understanding of his sexual dynamics. He exhibited the same personality characteristics but slightly attenuated.

Beginning in 2011, appellant was recommended for placement in the Therapeutic Community at the STU in "an attempt to try [to] address some of [his] personality characteristics, which are considered dynamic factors that can contribute to sexual reoffense." By 2016, appellant still refused to participate in the Therapeutic Community despite being offered an accelerated six-month review if he participated in it. Appellant did not attend any self-help groups until 2017 and had not taken modules (didactic classes) for the past year.

The Therapeutic Community provides "a substantially higher and more intensive treatment level than is available in the regular groups." Approximately

6

seventy percent of the sexually violent predator programs in this country use components of the Therapeutic Community. Dr. DeCrisce opined participating in the Therapeutic Community would lower appellant's risk by "address[ing] his continued antisocial orientation and some of the charact[e]rological disturbances." He noted appellant did not appear to have "a substantial and extensive ability to relate his triggers, potential interventions, problems, shortcomings, and things of that nature."

Appellant admitted the coercive nature of the 1986 offense was sexually arousing. Dr. DeCrisce reviewed appellant's offense history and "pattern of offense behavior." He gave less weight to charges that did not result in convictions. Dr. DeCrisce noted appellant also admits to the 1996 rape at knifepoint and to being aroused by the fear he put in the victim. Appellant admitted he was aroused to fear since he was a child. Dr. DeCrisce found appellant's criminal history significant, stating appellant had committed:

> at least two, if not three, admitted sexual offenses that are violent, using knives. He's admitted to arousal to fear. One of the offenses was to punish and humiliate a woman. He's had a history of consensual bondage play coercive behaviors in the past. And also has a severely violent and impulsive criminal history throughout his life.

A-2703-17T5

Dr. DeCrisce stated appellant's lifelong history of criminality was the basis for his diagnosis of Antisocial Personality Disorder. He concluded appellant had "a particularly severe version of antisociality" "that is difficult to treat" as evidenced by his Psychopathy Checklist-Revised test (PCL-R) score of 30, "which suggests that he meets the construct for psychopathy."[4] Dr. DeCrisce noted "people with higher PCL-R scores are more prone to violent behaviors."

While acknowledging appellant is "improving and doing well in treatment," Dr. DeCrisce opined appellant remained a high risk to sexually reoffend unless confined in a secured treatment facility because he had not yet "achieved an adequate level of mitigation through treatment to adequately [m]itigate his high risk . . . for substantial community harm." He noted several actuarial instruments placed appellant at "a high risk of community sexual harm." Dr. DeCrisce opined the treatment gains made by appellant thus far were "not adequate to reduce that risk," but he may achieve "those gains if he goes to the therapeutic community, and does reasonably well."

---

[4] "The PCL-R test is a widely used method to measure psychopathic personality traits." Trantino v. N.J. State Parole Bd., 166 N.J. 113, 206 (2001) (Baime, J., dissenting). A score of thirty is the cutoff for reliable classification as a psychopath. Ibid.

Dr. Paolillo, a member of the TPRC, was admitted as an expert in psychology and the Therapeutic Community. She evaluated appellant as part of his annual TPRC review and prepared the TPRC's report and an addendum to the report, addressing appellant's "eligibility and need for exposure to the [Therapeutic Community]." Like Dr. DeCrisce, Dr. Paolillo considered the reports and diagnostic impressions of other evaluators, but formed her own diagnoses and opinions. She too diagnosed appellant with severe Antisocial Personality Disorder and Other Specified Paraphilic Disorder (Nonconsent), which caused him to have serious difficulty in controlling his sexual offending behavior and predisposed him to commit acts of sexual violence. She found appellant had a high risk of sexually reoffending in the foreseeable future.

Dr. Paolillo reported actuarial instruments placed appellant in the "Well Above Average Risk Level IVb" under the Static-99R and "high level of dynamic needs" category under the Stable-2007.[5] She noted appellant's scores

_____

[5] "The Static-99 is an actuarial test used to estimate the probability of sexually violent recidivism in adult males previously convicted of sexually violent offenses." In re Commitment of R.F., 217 N.J. 152, 164 n.9 (2014) (citing Andrew Harris et al., Static-99 Coding Rules Revised-2003 5 (2003)). The Stable-2007 is an actuarial instrument used to assess dynamic risk factors that can change over time. Kevin Baldwin, Sex Offender Risk Assessment, Assessment and Planning Initiative 2-3 (July 2015), https://www.smart.gov/pdfs/SexOffenderRiskAssessment.pdf.

A-2703-17T5

on the PCL-R "suggest that he meets the clinical threshold for the construct of psychopathy" and "has a high number of psychopathic traits which require therapeutic attention and which may interfere with therapeutic progress." His PCL-R score "results in the 'severe' qualifier" on his Antisocial Personality Disorder diagnosis.

Dr. Paolillo noted appellant was in "the initial stage of the core phase of treatment." The Therapeutic Community is "a more advanced subset" of the core phase of treatment. She opined appellant requires "a more intense exposure to treatment." While appellant can advance in treatment without participating in the Therapeutic Community, his "progress will occur more slowly," as it had "for so many years."[6]

Dr. Lorah acknowledged appellant's offenses, including those he was not convicted of, have clinical significance even when the individual denies committing them. As did the State's experts, Dr. Lorah diagnosed appellant with Antisocial Personality disorder and Other Specified Paraphilic Disorder (Nonconsent). Dr. Lorah confirmed both of these conditions predispose

---

[6] The Therapeutic Community is not mandatory. As noted by Dr. Paolillo in her addendum report: "Entry or exposure to the Therapeutic Community is not a preliminary requirement to attaining discharge candidacy . . . ." Committees are recommended for the Therapeutic Community on an individual basis. They must then apply to participate in the Therapeutic Community.

A-2703-17T5

appellant to sexually reoffend. He also agreed the combination of these conditions is among the most robust predictors of reoffense.

Despite these findings, Dr. Lorah opined appellant had received "enough in treatment at the STU to address the emotional, cognitive, and/or volitional aspects of the statute and that he would be less than highly likely to commit a sexual offense if released to the community under a conditional discharge." He concluded appellant "has a firm understanding of his offense cycle, and . . . has addressed cognitive distortions and justifications that supported his sex crimes." He found appellant is "learning how to control his anger," and is "developing an understanding of victim empathy." He also opined appellant is highly likely to comply with a conditional discharge plan based on his behavior and compliance with recommendations during the past seven years at the STU. Notably, appellant's refusal to participate in the Therapeutic Community did not factor into Dr. Lorah's opinion.

Based on appellant's treatment knowledge and impact, Dr. Lorah opined appellant is "less than highly likely" to reoffend if released on a conditional discharge. In reaching that conclusion, Dr. Lorah noted actuarial assessments do not alone accurately predict risk of re-offense.

The trial court issued a lengthy oral decision recounting appellant's offense history and the voluminous record. It emphasized it was not relying on hearsay to support its conclusions, but noted the State's witnesses were permitted "to utilize and to rely upon TPRC reports, treatment notes, juvenile presentence reports, [and] clinical certificates supporting the petition." The trial court found the documents relied upon by the experts are the kind of documents relied upon by experts in the field of performing risk assessments. The trial court also noted reports by STU teams are business records admissible under N.J.R.E. 803(c)(6).

The trial court focused on treatment effect. It credited the State's experts' shared conclusion that, although appellant had progressed, he still needs further treatment progress to justify a conditional release. In that regard, appellant "still needs to show the integration that he's made, the internalization that he's made of what he's learned." The court further credited the State's experts' conclusions that appellant exhibited a number of characteristics that militate against such a finding. The court concluded appellant should participate in the Therapeutic Community, finding the State's experts were in a much better position than Dr. Lorah to evaluate appellant's need for the Therapeutic Community.

The trial court noted it was undisputed appellant suffered from Antisocial Personality Disorder and Other Specified Paraphilic Disorder (Nonconsent) and

A-2703-17T5

has psychopathic traits. The trial court found the State proved by clear and convincing evidence that: (1) appellant suffers from a mental abnormality and a personality disorder, which predispose him to sexually reoffend; (2) if released, appellant would have serious difficulty controlling his sexually violent behavior within the reasonably foreseeable future; and (3) appellant is highly likely to engage in acts of sexual violence if he were released at this time. The trial court entered judgment continuing appellant's involuntary civil commitment to the STU. This appeal followed.

Appellant raises the following issues on appeal: (1) the State did not meet its burden of proof since its expert quantified appellant's sexual recidivism as no higher than 36.3 percent; (2) the trial court erred by considering information outside the record and misapplying the standard for commitment; (3) the trial court erred by adopting an interpretation of the "highly likely" standard that considered victim impact; (4) the court rules authorize a committee to engage in discovery through depositions, document requests, and interrogatories; (5) the trial court's decision was based on inadmissible hearsay; (6) the State's experts were unqualified to testify as fact or expert witnesses on the Therapeutic Community; and (7) the State's experts rendered inadmissible net opinions

13

regarding the need for continuing commitment. We have considered these arguments and find they lack merit.

We first address appellant's argument that he was entitled to engage in discovery through interrogatories, deposing a member of the TPRC, and production of documents pertaining to the Therapeutic Community. He contends, as a civil litigant, his right to discovery is governed by Rules 4:10-1 and -2, which permit parties in civil cases to undertake discovery through interrogatories, depositions, and requests for production of documents. Relying on an unpublished opinion,[7] appellant further contends Rule 4:74-7(d) does not deprive him of the right to conduct the requested discovery in an SVPA proceeding. We are unpersuaded by this argument.

Appellate courts "normally defer to a trial court's disposition of discovery matters." Payton v. N.J. Tpk. Auth., 148 N.J. 524, 559 (1997). We "apply an abuse of discretion standard to decisions made by . . . trial courts relating to matters of discovery." Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011) (citing Bender v. Adelson, 187 N.J. 411, 428 (2006)).

---

[7] "No unpublished opinion shall constitute precedent or be binding upon any court." R. 1:36-3. Indeed, unreported decisions "serve no precedential value, and cannot reliably be considered part of our common law." Trinity Cemetery Ass'n v. Twp. of Wall, 170 N.J. 39, 48 (2001) (Verniero, J., concurring).

Ordinarily, "we decline to interfere with discretionary rulings involving discovery unless it appears that an injustice has been done." Cunningham v. Rummel, 223 N.J. Super. 15, 19 (App. Div. 1988).

We discern no abuse of discretion by the trial court in denying appellant's motion to compel discovery through interrogatories, depositions, and document demands, but reach that conclusion on different grounds than the trial court. See State v. Heisler, 422 N.J. Super. 399, 416 (App. Div. 2011) (stating an appellate court is "free to affirm the trial court's decision on grounds different from those relied upon by the trial court").

We begin our analysis by noting appellant received substantial discovery from the State. The State timely provided all of appellant's treatment records, treatment notes, and its experts' reports and curriculum vitae.

The trial court concluded discovery in civil commitment hearings is limited by Rule 4:74-7(d) to a "right to inspect and copy all records relating to the patient's mental condition, including the patient's clinical chart." The SVPA and the court rules are silent as to the nature and extent of discovery available to a sexually violent predator, other than the right under N.J.S.A. 30:4-27.30(a) to review the documents resulting in the temporary commitment. We decline to apply Rule 4:74-7 to SVPA proceedings "because the rule predates the SVPA

and by its terms it applies to civil commitments generally, incorporating the definitions in N.J.S.A. 30:4-27.2." In re Commitment of G.D., 358 N.J. Super. 310, 316 (App. Div. 2003) (citing R. 4:74-7(a)).

Even so, the statutory procedures are far more circumscribed than other types of civil proceedings. A civil committee under the SVPA does not have the right to trial by jury. In re Civil Commitment of G.G.N., 372 N.J. Super. 42, 46 (App. Div. 2004) (citing In re Civil Commitment of J.H.M., 367 N.J. Super. 599, 606-07 (App. Div. 2003)). Nor does a civil committee have the right to review the report prepared for the Department of Corrections' use in determining whether he should be referred to the Attorney General for civil commitment proceedings. Greenfield v. N.J. Dep't of Corr., 382 N.J. Super. 254, 257 (App. Div. 2006). In addition, the SVPA requires a final hearing within twenty days of the temporary commitment. N.J.S.A. 30:4-27.29(a). Meeting that deadline would not be possible if the committee were permitted to propound interrogatories and conduct depositions.

The SVPA took effect in August 1999. L. 1998, c. 71, § 1. No published opinion during the intervening nineteen years recognizes the right to engage in such discovery. Nor has the Supreme Court adopted specific SVPA discovery

rules. Such considerations "are more appropriately the subject of evaluation by the Civil Practice Committee." G.D., 358 N.J. Super. at 317.

We further note trial courts may limit discovery on motion of a party or on its own initiative. R. 4:10-2(g). Not only did appellant have possession of the treatment records, treatment notes, and expert reports prior to the hearing, but both of the State's experts were extensively cross-examined by defense counsel. Thus, appellant suffered no unfair prejudice as a result of the discovery limitation imposed by the trial court.

That being said, we recognize "committees have the right to present evidence" at review hearings "on the issue of whether or not they have been receiving appropriate treatment." In re Civil Commitment of K.D., 357 N.J. Super. 94, 98 (App. Div. 2003). The SVPA charges the Division of Mental Health Services with providing treatment for the committee. Id. at 98-99. "Such treatment shall be appropriately tailored to address the specific needs of sexually violent predators." Id. at 99 (quoting N.J.S.A. 30:4-27.34(b)). Consequently, courts have the inherent power to examine the conditions of confinement and treatment recommended for an SVPA committee. Ibid. Nevertheless, a review hearing is not the proper proceeding to challenge a sex offender's treatment program. Ibid. As we stated in K.D.:

17

We certainly do not suggest that any individual commitment review hearing be converted into a challenge to the sexual offender's treatment program available routinely to the general population of committees at the [STU]. Such a challenge must be brought in a plenary individual or class action in the regular trial courts, state or federal, and not in a particular committee's individual initial or annual review hearing under the SVPA, the purpose of which is to decide if confinement under the SVPA and [In re Commitment of W.Z., 173 N.J. 109 (2002)] standards is proper.

[Ibid.]

The Therapeutic Community is in regular use at the STU. According to Dr. Paolillo, it is utilized at the STU "to support[] the treatment needs of those [r]esidents who present with sexual preoccupation, antisocial and/or addictive behaviors."[8]

The trial court expressly stated appellant could challenge the appropriateness of the Therapeutic Community in a separate action. We agree. Although appellant has the right to challenge his treatment program, including the recommended Therapeutic Community, he must do so in a separate plenary

---

[8] The Therapeutic Community is also part of the sex offender treatment program at the ADTC, G.G.N., 372 N.J. Super. at 47, and is used at correctional facilities to treat "inmates with moderate to extreme substance use disorders," N.J.A.C. 10A:24-1.3.

action, not in a review hearing. Appellant can pursue the types of discovery he sought in this matter in such a plenary action.

In a single sentence unsupported by case law, appellant further contends the trial court's limitation on discovery violated his right to due process.[9] We disagree. Appellant will be afforded full due process if he brings a separate plenary action to challenge his treatment plan, including the right to obtain relevant discovery through the methods permitted under Rules 4:10-1 and -2. For these reasons, the trial court's discovery limitation did not violate appellant's due process rights.

Appellant further argues the State's experts offered inadmissible net opinions. We disagree.

"When reviewing an evidentiary ruling whether to bar expert testimony, we apply considerable deference to the trial court and generally do not disturb the trial court's decision unless the ruling demonstrably comprises an abuse of discretion." In re Civil Commitment of A.Y., ___ N.J. Super. ___, ___ (App. Div. 2019) (slip op. at 24) (citing Hisenaj v. Kuehner, 194 N.J. 6, 16 (2008)).

---

[9] "[P]arties may not escape their initial obligation to justify their positions by specific reference to legal authority. Paucity of such reference suggests a like paucity of authority helpful to the party." State v. Hild, 148 N.J. Super. 294, 296 (App. Div. 1977); see also Sackman v. New Jersey Mfrs. Ins. Co., 445 N.J. Super. 278, 298-99 (App. Div. 2016).

"An expert may not provide an opinion at trial that constitutes 'mere net opinion.'" Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 410 (2014) (quoting Pomerantz, 207 N.J. at 372). The net opinion rule bars admission "of an expert's conclusions that are not supported by factual evidence or other data." Townsend v. Pierre, 221 N.J. 36, 53-54 (2015) (quoting Polzo v. Cty. of Essex, 196 N.J. 569, 583 (2008)). "The expert must provide the factual basis and analysis that support the opinion, rather than stating a mere conclusion." A.Y., (slip op. at 25) (citing Davis, 219 N.J. at 410). "[T]he net opinion doctrine requires experts to 'be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are [scientifically] reliable.'" Id. at 26. (quoting Townsend, 221 N.J. at 55).

Both of the State's experts interviewed appellant and relied on prior evaluations, treatment records, other appropriate documents, including actuarial instruments, which supported their conclusions. Appellant contends the trial court's decision was based on inadmissible hearsay. We disagree.

"[T]o the extent the information the experts relied upon is of a type reasonably relied upon by experts in that field, the State can prove the grounds for commitment without calling as a witness each person who provided

information upon which the expert relied." Id. at 21 (citing In re Civil Commitment of W.X.C., 407 N.J. Super. 619, 641 (App. Div. 2009), aff'd on other grounds, 204 N.J. 179 (2010)).[10] "Prior expert opinions are admissible, not as substantive evidence, but as a basis for the expert's opinion." Id. at 22 (citing In re Commitment of E.S.T., 371 N.J. Super. 562, 576 (App. Div. 2004)).

The State's experts provided the factual bases for their conclusions and explained the methodologies they employed. Their testimony confirmed their opinions were based on a review of data and information of the type relied upon by others in their scientific community. Although their conclusions differ from those of Dr. Lorah, the trial court properly determined they did not render net opinions.

The applicable law and our scope of review is well settled. Involuntary civil commitment under the SVPA can follow an offender's completion of a custodial sentence when he or she "suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment."

---

[10] The Confrontation Clause of the Sixth Amendment of the United States Constitution does not apply to civil commitment hearings under the SVPA. G.G.N., 372 N.J. Super. at 57 (citing Commonwealth v. Given, 808 N.E.2d 788, 794 n.9 (2004)).

A-2703-17T5

N.J.S.A. 30:4-27.26. The SVPA defines "mental abnormality" as "a mental condition that affects a person's emotional, cognitive or volitional capacity in a manner that predisposes that person to commit acts of sexual violence." Ibid. The mental abnormality or personality disorder "must affect an individual's ability to control his or her sexually harmful conduct." W.Z., 173 N.J. at 127. A showing of an impaired ability to control sexually dangerous behavior will suffice to prove a mental abnormality. Id. at 129; see also R.F., 217 N.J. at 173-74.

At an SVPA commitment hearing, the State has the burden of proving the offender poses a threat:

> to the health and safety of others because of the likelihood of his or her engaging in sexually violent acts. . . . [T]he State must prove that threat by demonstrating that the individual has serious difficulty in controlling sexually harmful behavior such that it is highly likely that he or she will not control his or her sexually violent behavior and will reoffend.
>
> [W.Z., 173 N.J. at 132.]

The court must address the offender's present "serious difficulty with control over dangerous sexual behavior." Id. at 132-33. To commit or continue the commitment of the individual to the STU, the State must establish by clear and convincing evidence that it is highly likely the individual will sexually

reoffend within the reasonably foreseeable future. Id. at 133-34; see also R.F., 217 N.J. at 173. Because commitment under the SVPA is based on "present serious difficulty with control over dangerous sexual behavior," the "annual court review hearings on the need for continued involuntary commitment" require assessment of "fresh information concerning the committee's dangerousness." W.Z., 173 N.J. at 132-33.

The trial court correctly applied these standards to the evidence adduced at the 2017 review hearing. The testimony of the State's experts clearly demonstrates appellant continues to have mental abnormalities that pose a serious danger that he will sexually reoffend if released from the STU. Although Dr. Lorah opined appellant was not highly likely to sexually reoffend, the trial court is "not required to accept all or any part of" an expert's opinion. R.F., 217 N.J. at 174 (quoting In re D.C., 146 N.J. 31, 61 (1996)). The trial court had a reasonable basis to credit the testimony of the State's experts over the more positive opinions expressed by Dr. Lorah. See Angel v. Rand Express Lines, Inc., 66 N.J. Super. 77, 85-86 (App. Div. 1961) (recognizing the fact-finder's prerogative to accept the opinions of certain testifying experts and to reject competing opinions of an opposing expert). Moreover, "[t]he ultimate

determination is 'a legal one, not a medical one, even though guided by medical expert testimony.'" R.F., 217 N.J. at 174 (quoting D.C., 146 N.J. at 59).

Appellant argues the State failed to meet its burden of proof because the actuarial instruments used by the State's psychiatrist quantified appellant's risk of sexually reoffending at less than fifty percent. We disagree.

In W.Z., the trial court and the Appellate Division viewed the likelihood determination "as if comparable to a preponderance, or fifty-one percent chance of probability." W.Z., 173 N.J. at 131 (citing In re Commitment of W.Z., 339 N.J. Super. 549, 578-80 (App. Div. 2001)). Our Supreme Court rejected this description of the probability of reoffending standard, stating "[t]hose descriptions can cause confusion where the parties must present and the trial court must evaluate difficult, nuanced medical evidence and reduce it to specific findings affecting a person's liberty." Id. at 132.

"[I]n cases where lack of control is at issue, 'inability to control behavior' will not be demonstrable with mathematical precision." Kansas v. Crane, 534 U.S. 407, 413 (2002). The Supreme Court declined to establish a precise standard for the degree of "lack of control" that must be proven. Ibid. "Our Supreme Court likewise did not impose a technical meaning or quantitative threshold, holding 'the State must prove by clear and convincing evidence . . . it

24

is highly likely that the person will not control his or her sexually violent behavior and will reoffend.'"  A.Y. (slip op. at 27) (alteration in original) (quoting W.Z., 173 N.J. at 133-34).

Actuarial instruments "are admissible for consideration by the State's experts" at SVPA proceedings "as a factor in the overall prediction process."  In re Commitment of R.S., 339 N.J. Super. 507, 534, 548 (App. Div. 2001), aff'd, 173 N.J. 134 (2002).  Although properly considered as part of the calculus of information, the quantification of the risk of sexually reoffending provided by actuarial instruments is not controlling.  On the contrary, actuarial information is "simply a factor to consider, weigh, or even reject, when engaging in the necessary factfinding under the SVPA." R.F., 217 N.J. at 164 n.9 (quoting R.S., 173 N.J. at 137).

Our scope of review of judgments in SVPA commitment cases is "extremely narrow." R.F., 217 N.J. at 174 (quoting D.C., 146 N.J. at 58).  "The judges who hear SVPA cases generally are 'specialists' and 'their expertise in the subject' is entitled to 'special deference.'" Ibid. (quoting In re Civil Commitment of T.J.N., 390 N.J. Super. 218, 226 (App. Div. 2007)).  "We give deference to the findings of our trial judges because they have the 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court

cannot enjoy.'" Ibid. (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). "Accordingly, an appellate court should not modify a trial court's determination either to commit or release an individual unless 'the record reveals a clear mistake.'" Id. at 175 (quoting D.C., 146 N.J. at 58). "So long as the trial court's findings are supported by 'sufficient credible evidence present in the record,' those findings should not be disturbed." Ibid. (quoting Johnson, 42 N.J. at 162); see also In re Civil Commitment of J.M.B., 197 N.J. 563, 597 (2009).

Although appellant has exhibited some progress in the years following his review hearing in May 2015, we are satisfied the trial court's order of continued commitment is both legally sound and supported by sufficient credible evidence in the record.

Appellant's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

26                                                          A-2703-17T5